SAMUEL WHITE, 2d, *versus* ELEAZER C. ELWELL & *al.*
SAME *versus* REUBEN HUTCHINSON & *al.*

One who cuts the hay of another and puts it into the latter's barn, under a verbal agreement by which the hay is to be divided, and one half assigned to him for his services, has the rights of a tenant at will.

Such right would continue until the tenancy should be terminated, or the property removed, if done within a reasonable time.

After the hay is divided, the tenant has the right to enter within a reasonable time, and remove it, and the owner could not revoke the license so as to prevent it.

If, in such case, the owner of the barn forbids the tenant entering to take away the hay, he may do it forcibly, at a reasonable time, and in a reasonable manner, doing no more injury than reasonably necessary to obtain and carry away his hay.

ON EXCEPTIONS to the ruling of KENT, J.

These cases were tried together. They were TRESPASS for breaking and entering the plaintiff's barn and carrying away his hay. The taking of the hay was admitted. The evidence showed that the plaintiff owned a farm with a barn upon it, in the town of Weld, where the acts complained of were committed.

At the trial, the plaintiff claimed, and introduced evidence tending to show that, in July, 1859, he contracted orally with the defendant Elwell to cut the hay on his farm, and put it into the barn, and also cut the bushes upon a certain lot; that it was agreed that, if Elwell performed his part of the contract, the hay was to be divided equally, and Elwell was to have one half for his services; that nothing was said about how long time Elwell was to have the right of keeping his part of the hay in plaintiff's barn, or when it should be divided; that Elwell, with the assistance of Pratt, one of the defendants in the second case, to whom he had agreed to give one half of his share of the hay, cut the hay and put it in the barn, but did not cut the bushes; that the plaintiff then locked the barn and kept the key, and had never divided the hay with Elwell; that, in December following, he allowed Pratt

to take away one quarter of the hay; that, for the purpose of getting Pratt's hay, the latter, in the presence of the plaintiff, measured the mow and divided the hay into halves, and then divided one half into quarters, and immediately took away one quarter; that the plaintiff allowed one Hutchinson to take away from the other quarter a load for Elwell, at the same time Pratt took his, but sent word by said Hutchinson to Elwell, that he should not deliver any more hay to Elwell until he settled for not cutting the bushes; that, subsequently, the defendants came with teams for the remainder of Elwell's share of the hay, but the plaintiff refused to deliver or allow them to take the hay, and told Elwell, he could have no more of the hay till he settled for not cutting the bushes; that the next day, the defendants in the first action came with their teams for the hay, and the plaintiff forbade their entering his premises, or taking the hay, but they forcibly broke into the barn and carried away a portion of the quarter Pratt had measured out, and from which Hutchinson had taken the load for Elwell; that the defendants in second action came, and, though forbidden by plaintiff to come on his premises, entered the barn and carried away a portion of the same hay.

The defendants in both cases contended and offered evidence tending to show, that the contract was made between the plaintiff and Pratt, and that he contracted with Elwell; that, whether the contract was made with Pratt or Elwell, the cutting of the bushes was an entirely independent contract; that the hay was actually divided, and the part of Elwell and Pratt set out to them.

The plaintiff claimed that, even if the hay was divided, and there was an implied license for Pratt and Elwell to take it away, it was revocable, being oral, and that he did revoke it, and, for their subsequent acts, the defendants were trespassers.

The Judge, in his general charge, instructed the jury, among other things, that if they should find the bargain was made with Pratt that he was to cut the grass at the halves, that the

plaintiff was to furnish barn room for the whole hay; that it was divided by and between the parties, Pratt and White, and one half assigned to each, and, if Pratt, by the bargain, was to have the right to come and take his part away after such .division, then it was a license by plaintiff to Pratt to enter on the land and into the barn, and take it at a reasonable time and in a reasonable manner, doing no more injury than reasonably necessary to obtain and carry away his hay.

But, if they should find the contract was made with Elwell, and not with Pratt, was it, or not, for one half of the hay to be put in the barn and kept, and to be taken away as in the other case? If so, the property in the one half would not pass to Elwell until a division was made between him and the plaintiff, and he would have no right to enter and take it until such division. Was there, in fact, a division of the hay made by Pratt in the presence of the plaintiff, and did the plaintiff assent to that division? If he did, and took the part assigned to him as his half, understanding and agreeing that the other part was to be, and was then set apart and divided as the part for Elwell, which was to be and was at the same time divided between Pratt and Elwell, then the plaintiff's title and interest in that half, so set out, would be divested, and Elwell would be owner of it, and would have the right to enter and take it away under the rule before stated.

The plaintiff's counsel requested the Court to give the following instructions:—

1st. That if the jury find that the barn belonged to the plaintiff, and the hay was in it by defendants' consent, and, if they find that the hay was the property of the defendants alone, they had no right to break the barn to take it or any part of it away, without the consent of the plaintiff; and, if they did break the barn, that the defendants are liable. This was given, with the addition—if a condition of the agreement was that the party cutting the hay might come and take it away, that would be a license to enter, as stated in general instructions.

2d. That if the defendants had a license to put the hay in

the barn, that forbidding the defendants to enter to take the same, would have the effect to avoid the implied license to take it, by breaking or by entering to take it. Not given, except as stated in the first request; but the jury were instructed that the plaintiff could not revoke the license, if there was one in the contract, without assent of the other party.

The presiding Judge declined to give the requested instructions, except as above stated.

The verdict was for the defendants in both cases, the jury finding, by a special verdict, that the contract was made with Elwell, and the plaintiff excepted.

*W. W. Bolster* and *L. H. Ludden*, for plaintiff.

1. The contract being by parol, the interest of Elwell, by force of R. S., c. 73, § 10, was merely that of a tenant at will.

2. There was no authority given to take away the hay. At most, it was an implied license. Such a license is always revocable, when *executing*. *Cook* v. *Stearns*, 11 Mass., 553.

Such licenses, as the one in this case, are always revocable at any time before they are *fully executed*. *Ruggles* v. *Lesure*, 24 Pick., 187, and cases there cited.

The plaintiffs having revoked this license before the defendants entered his premises, they had no authority to do so, and the presiding Judge erred in withholding the requested instruction.

*Randall & Winter*, for defendants.

The opinion of the Court was drawn up by

Davis, J.—It is admitted by the counsel for the plaintiff that, upon the findings of the jury, the rights of Pratt and Elwell were those of "tenants at will." This is correct. *Cheever* v. *Pearson*, 16 Pick., 266. Such a right would continue until the property was removed, (unless sooner terminated by a notice under the statute therefor,) if the property should be removed within a reasonable time. *Gilmore* v. *Wilbur*, 12 Pick., 120.

If Elwell and Pratt put the hay into the plaintiff's barn by his permission, they had the right, after it was divided, to enter and take it away within a reasonable time.   The plaintiff might revoke the license as to its *remaining* there, giving them a sufficient time to remove it.   But the proposition, that he could so revoke it that they would have no right to take it away, is absurd.

It was substantially a sale of one half of the hay by the plaintiff, the other half thereof being cut in payment.   The right of the vendees to enter and take it away cannot be doubted.  *Nettleton* v. *Sikes,* 8 Met., 34.   The jury must have found that the hay had been divided by the parties before it was taken.   There was no error in the instructions given, or in refusing to give those which were requested and not given.

*Exceptions overruled.*

TENNEY, C. J., APPLETON, CUTTING, MAY and GOODENOW, JJ., concurred.