MICHAEL POWERS, BY HIS NEXT FRIEND, v. AMOS R. HARLOW.

*Dynamite injury—Safety of demised premises—Tenant's right of way—Children trespassing—License to go on landlord's premises.*

1. Leasing premises which cannot be approached except across the lessor's land gives a right of way across it of necessity in order that the tenement may be rendered beneficial.

2. When a tenant has a right of way of necessity across his landlord's land, it is the landlord's right to fix the line on which it shall run; but if he does not do so the tenant may fix it. And when once fixed it binds both.

3. If neither landlord nor tenant fixes a definite right of way across the former's land where such a right is necessary to the tenant to make his holding available, and the tenant, without objection, goes as he pleases without confining himself to a specific path, *it seems* to amount either to an agreement or a license that he may pass and repass in this manner so long as he travels in the general direction of a right line.

4. A license coupled with an interest is not revocable while the interest continues ; as where a license from a landlord to cross his land is necessary to the tenant's enjoyment of the premises for which he pays rent, and is therefore for the benefit of both.

5. A license to come upon one's premises, especially if in the licensor's interest, imposes upon him the duty to warn those who come, of any danger in coming of which he knows or ought to know and they do not.

6. Where a tenant is obliged to cross his landlord's premises in going to and from those which he occupies and is allowed to do so without objection, the arrangement being for the benefit of both parties, his children or members of his family may also go upon such premises to carry him his dinner or to help him.

| | |
|---|---|
| 53 | 507 |
| 57 | 109 |
| 64 | 505 |
| 68 | 94 |
| 68 | 95 |
| 76 | 144 |
| 53 | 507 |
| 96 | 158 |
| 53 | 507 |
| 97 | 159 |
| 53 | 507 |
| 127 | 499 |
| 53 | 507 |
| d128 | 472 |
| d128 | 477 |
| j128 | 481 |
| j128 | 482 |
| 53 | 507 |
| f146 | 7247 |
| 53 | 507 |
| e148 | 36 |
| 148 | 38 |
| 148 | 39 |
| j148 | 41 |
| j148 | 45 |
| j148 | 47 |
| 53 | 507 |
| f154 4 | 98 |

7. Children must be expected to act upon childish instincts; and those who are answerable for their safety must take precautions accordingly, and must expect them to meddle with anything that is likely to tempt them if left exposed to their view and within their reach.

8. A small boy, finding a dynamite cartridge in a common packing-box among the saw-dust, proceeded to crack it on a stone, and maimed himself for life. The boy was rightfully on the premises, and his father was at work hard by. The packing-box was on the ground under a rude shed and was marked "Powder," but neither the boy nor his father could read. It had been left exposed by the agent of the landlord. *Held*, that an action would lie against the landlord for the injury; and that neither the child nor his father could be said to be guilty of contributory negligence.

Error to Marquette. (Grant, J.) April 11–15.—April 30.

CASE. Plaintiff brings error. Reversed.

*W. P. Healy* for appellant. Keeping explosives near one's house or place of business is a nuisance: Wood on Nuisances § 142; *Hay v. Cohoes Company* 2 N. Y. 159; and one who keeps them is liable for damage done by them if kept near others: *Heeg v. Licht* 80 N. Y. 581; one who invites people on his premises must make the premises safe: *Marcott v. M. H. & O. R. R.* 47 Mich. 6; *Hydraulic Works Co. v. Orr* 83 Penn. St. 332; the rule of contributory negligence is modified by the fact that children are led by their instincts: *Lynch v. Nurdin* 1 Q. B. 29; *Railroad Company v. Stout* 17 Wal. 660; *Robinson v. Cone* 22 Vt. 225; *Rauch v. Lloyd* 31 Penn. St. 370; *Smith v. O'Connor* 48 Penn. St. 222; *Railroad Company v. Snyder* 18 Ohio St. 410; *Birge v. Gardiner* 19 Conn. 511; *Kay v. Penn. R. R. Co.* 65 Penn. St. 276; *Thomas v. Winchester* 6 N. Y. 410; *Mangam v. Brooklyn R. R.* 38 N. Y. 458; *Thurber v. Harlem &c. R. R.* 60 N. Y. 334; *Morgan v. Cox* 22 Mo. 378; *Richmond v. Sacramento &c. R. R.* 18 Cal. 356; *Powell v. Deveney* 3 Cush. 305; *Weick v. Lander* 75 Ill. 97; *Keffe v. Milwaukee &c. R. R.* 21 Minn. 212; *Whirley v. Whiteman* 1 Head 620; *St. Paul v. Kuby* 8 Minn. 154; *Government Street Railroad Co. v. Hanlon* 53 Ala. 79; *Lygo v. Newbold* 9 Exch. 302; but see *Mangam v. Atterton* L. R. 1 Exch. 239; *Hughes v. Macfie* 2 H. & C. 744, which are repudiated in 1 Thomp. Neg. 306; *Clark v. Chambers* L. R. 3 Q. B. Div. 339.

*F. O. Clark* for appellee. The owner of premises owes no special duty to children coming thereon without right: *Hargreaves v. Deacon* 25 Mich. 2; *Gavin v. Chicago* 97 Ill. 71; *Phila. R. R. v. Spearen* 47 Penn. St. 300; *Meeks v. S. Pacific R. R.* 20 Am. Rep. 118; *Tol., Wab. & West. R. R. v. Grable* 88 Ill. 442; *T., W. & W. R. R. v. Miller* 76 Ill. 278; *Gramlich v. Wurst* 27 Am. Rep. 684; *McAlpine v. Powell* 26 Am. Rep. 555; *St. L. & C. R. R. v. Bell* 25 Am. Rep. 269; *Severy v. Michewon* 21 Am. Rep. 514; *Cauley v. P. C. & St. L. R. R.* 13 Chic. L. News 89 (1880); *Railroad Company v. Hummell* 44 Penn. St. 378; *Railroad Company v. Norton* 24 Penn. St. 465; *Duff v. Allegheny Valley R. R.* 12 Pittsburg L. J. 58; *Hestonville Ry. v. Connell* 88 Penn. St. 520; *Nagle v Allegheny Valley R. R.* 88 Penn. St. 35; *Mulherrin v. D. L. & W. R. R.* 81 Penn. St. 366; *Mungler v. Tonawanda R. R.* 4 N. Y 349; 5 Den. 255; *Galena R. R. v. Jacobs* 20 Ill. 478; *Bush v. Brainard* 1 Cow. 78; Shearm. & Redf. Neg. § 38; *I. C. R. R. Co. v. Godfrey* 71 Ill. 506; *Johnson v. Bost. & Me. R. R.* 125 Mass. 75; *Cent. Br. U. P. R. R. v. Henigh* 23 Kan. 347; *A. & N. R. R. Co. v. Flynn* 24 Kan. 627; *Smith v. Hestonville, M. & F. P. R. R.* 9 Rep. 454; *Balt. & P. R. R. v. State* 54 Md. 648; *C., B. & Q. R. R. v. Stumps* 69 Ill. 409; *C. & N. W. R. R. v. Smith* 46 Mich. 510; if a child is hurt while meddling with what he knows to be dangerous he is guilty of contributory negligence: Whart. Neg. § 322; *C. & A. R. R. v. Murray* 71 Ill. 607; *Steele v. Burkhardt* 104 Mass. 59; or else its parents are: *J. M. & I. R. R. Co. v. Bowen* 40 Ind. 545.

COOLEY, C. J. Action on the case to recover damages for an injury alleged to have been caused by the negligence of defendant's servant.

The material facts are the following: For many years the defendant has been owner of a farm near the city of Marquette, which has been under the general management of one Hodgson, his foreman or superintendent, who has leased small parcels to laboring men for cultivation. Upon these parcels potatoes and other vegetables have been raised, and the ground has been cultivated by the lessees with the assistance of their wives and children. In the year 1883 the farm was divided by a rail fence into two fields, in one of which there were some ten or twelve parcels of the leased land, and

in the other thirty. The farm was formerly covered with timber, and many stumps still remain, which the superintendent when he finds them in the way of cultivation has been accustomed to remove by the use of dynamite. The dynamite is put up by the manufacturers in boxes made of rough boards in which it is covered and surrounded with sawdust, and in the same box, but put up by themselves in a small tin box, are placed the exploders. These exploders are shaped like ordinary percussion caps, but are very much larger, and they are partially filled with a fulminate, which is exceedingly sensitive, and more powerful as well as more explosive than dynamite. It is liable to explode at any time if accidentally struck against a stone or any hard metal, or if picked with a pin or knife or touched with fire. A piece of dynamite is exploded by placing one of the exploders at the end with a fuse attached which is ignited, and stumps are blown in pieces by their use. In the spring of 1883 one of the wood boxes containing dynamite and exploders was deposited under what is called by some of the witnesses a temporary shed on the farm, where it had been placed by Hodgson. The shed was made by placing a piece of scantling across the top of a stump, and sloping planks from this piece to the ground. The planks did not form a perfect enclosure, and it was in evidence that persons had sometimes gone under the planks to escape showers. The father of the plaintiff had done this a few days before the injury, and he had seen the box there partly uncovered with sawdust in it but he did not know what else. There were screws in the top boards of the box to fasten them down, and these were screwed in and out with the fingers. The word "powder" was written conspicuously upon the box, but plaintiff and his father could not read, and had not been told that anything dangerous was stored there. The shed was distant from any public highway. A farm road which was used by defendant and his lessees ran from the direction of the city towards the leased parcels but without reaching any of them, and in passing from its terminus to the several parcels one would pass by the shed, but how near to it would depend

upon the parcel to which he was going.  One parcel was leased by the plaintiff's father, and this was one of the nearest to the road and to the shed.  He had leased it for some years; it contained a little less than an acre, and in 1883 he was paying rent for it at the rate of sixteen dollars an acre and had it planted to potatoes.  In going to their several holdings the lessees crossed each other's parcels as was found convenient, and also passed over land plowed by defendant for his own use.  How near the plaintiff's father would go to the shed in passing from the farm road in a straight line to his own holding is left uncertain on the evidence; it might perhaps be ten rods, or it might be less than one.  There was no enclosure about the shed, and nothing to warn people away from it except the word "powder" upon the box.  The superintendent went to the box for dynamite and exploders as he had occasion to use them.  The evidence all tended to show that the handling of the exploders by persons who were ignorant of their nature, or were careless, or under circumstances rendering them liable to accidental concussion would be exceedingly hazardous.

On July 4, 1883, the plaintiff's father was at work among his potatoes, and plaintiff, who was then eight years and four months old, went with a brother two years older to take the father his dinner.  When they had delivered the dinner to him they worked for an hour or so destroying potato bugs, and then moved about at pleasure for an hour or so longer in the vicinity of their father's work.  The plaintiff looked into the shed and saw the box there partly uncovered, and from the sawdust took out one of the exploders.  He was aware of no danger from handling it, and thought no harm in taking it from the open box.  After a little he picked up a small stone, as large as his fist, and holding the exploder upon another stone which he describes as being of the size of a spittoon, he struck it with the stone in one hand while holding it in the other, and with the third blow it exploded, breaking the stone on which it was held, and tearing from his left hand the thumb and one finger.  For this injury the suit was instituted.

The negligence charged against the defendant was the keeping of the exploders thus exposed and in dangerous proximity to where persons were accustomed to pass and repass, and where children like the plaintiff with childish instinct and without any knowledge of the great peril to which they were exposed might go to the open box and take and handle them.

When the case was submitted to the jury the circuit judge instructed them to return a verdict for the defendant. This he did upon the ground that it is the duty of parents to take care of their children, and to see that they do not commit trespass; and if they do not do that, but suffer the children to wander away upon other people's property, the children go there at their own risk, and the negligence is contributory on the part of the parents in allowing them to wander where they have no right. And this negligence of the parents is for the purposes of legal remedy imputable to the children themselves.

The instruction was probably given in reliance upon *Hargreaves v. Deacon* 25 Mich. 2, which was such a case as the instruction supposed. Counsel for the defendant with commendable industry has collected and brought to our attention a large list of similar cases in which the same principle has been laid down and applied, and he insists that they are in their facts analogous to the present case. The children, it is said, were trespassers in going in or to the shed; and even if it could be held that they were licensed to go where they did, the result must be the same, since a license to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner to provide against accidental injuries. *Ill. Cent. R. Co. v. Godfrey* 71 Ill. 506.

This is the point upon which the case must turn; and it therefore becomes necessary to determine whether on the one hand the circuit judge was correct in holding the plaintiff to be a trespasser, or on the other the counsel are justified in regarding him as a licensee to whom the defendant owed no duty of protection.

It is quite certain that the plaintiff's father was not a tres-

passer in crossing the defendant's land to reach the land he had leased. The leasing by implication gave a right of way of necessity, in order that he might render his tenement beneficial. *Clark v. Cogge* Cro. Jac. 170; *Beaudely v. Brook* Cro. Jac. 189; *Pinnington v. Galland* 9 Exch. 1; *Pernam v. Wead* 2 Mass. 203; *Underwood v. Carney* 1 Cush. 285; *Pierce v. Selleck* 18 Conn. 330: *Holmes v. Seely* 19 Wend. 507; *Lawton v. Rivers* 2 McCord 445; *Thompson v. Miner* 30 Iowa 386; *Thomas v. Bertram* 4 Bush 317; *Tracy v. Atherton* 35 Vt. 52; *Wissler v. Hershey* 23 Penn. St. 333; *Mitchell v. Seipel* 53 Md. 251 and the notes thereto: 36 Am. Rep. 415; *Davies v. Sear* L. R. 7 Eq. 427. The defendant, as the party creating this way, had the right to make out the line on which it should run; and on his failure to do so, the right of defining it passed to his tenant: *Holmes v. Seely* 19 Wend. 507; and when it was once defined both parties would be bound by the lines so fixed. *Nichols v. Luce* 24 Pick. 102; s. c. 35 Am. Dec. 302. See *O'Rorke v. Smith* 11 R. I. 259; s. c. 23 Am. Rep. 440. But in this case the way was marked out by neither party, and the tenant had for several years gone as was convenient from the end of the farm road to the land leased; not always on the same precise line, but probably without any considerable departure from the same general direction. No fences were built, or stakes set, or lines marked to indicate that from any portion of the land between the farm road and his own lot he was excluded; and these facts seem to make out a practical agreement of the parties that the privilege of passing and repassing might be freely exercised within limits broader than an ordinary footpath, and that the tenant should be deemed within the limits of his right if he did not depart altogether from the direct line between the end of the farm road and the lot which had been leased to him.

If however we are in error as to this, and the right of passage while not specifically defined is to be considered as only a license, the conclusion in this case must still be the same. Licenses in general may be revoked by the licensor at pleasure; but this license would continue while the lease was in

force ; it had been created not exclusively for the benefit of the tenant but for the benefit of the defendant also ; the tenant had paid rent on a leasing to which the license was a necessary incident, and his right to the enjoyment of it was as complete as the right of the defendant to the money he had received for the rent. The license was therefore a license coupled with an interest, and was not revocable while the lease was in force. *Wood v. Manley* 11 Ad. & El. 34; *Hunt v. Rousmanier* 8 Wheat. 174; *Barnes v. Barnes* 6 Vt. 388; *Boults v. Mitchell* 15 Penn. St. 371; *Thompson v. McElarney* 82 Penn. St. 174; *Whitmarsh v. Walker* 1 Met. 313; *Giles v. Simonds* 15 Gray 441; *Smith v. Benson* 1 Hill 176; *Bonney v. Smith* 17 Ill. 531; *White v. Elwell* 48 Me. 360; *Miller v. State* 39 Ind. 267; *Lewis v. McNatt* 65 N. C. 63. That the defendant might have restricted the privilege within the bounds of an ordinary footpath may be conceded; but it is enough for the purposes of this case that apparently he had not cared to impose such a restriction and certainly had not done so.

A person giving such a license, especially when he gives it wholly or in part for his own interest as was the case here, and thereby invites others to come upon his premises, assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of, or ought to know of, and of which they are not aware. This principle has been recently examined and affirmed by this Court in *Samuelson v. Cleveland Iron Mining Co.* 49 Mich. 164, 170, and again in *McKone v. Mich. Cent. R. R. Co.* 51 Mich. 601; and also, recently by the Federal Supreme Court in *Bennett v. Railroad Co.* 102 U. S. 580; and is too familiar to require further references. That duty was incumbent upon the defendant in this case.

But under the circumstances disclosed in this case the invitation to the tenant to come upon the land was an invitation which embraced his family also. The tenant was a laboring man, apparently of small means ; and it is customary for such men to be assisted in their manual labor by the members of their families ; and the defendant must have

understood that the persons who rented of him these small patches of land would be likely to avail themselves of the services of their children in cultivating them. It was perfectly allowable for the plaintiff's father to do this; and defendant would have had no right to keep the children from the field if he had been disposed to do so. Whether they went to take their father his meals, or to give him more direct aid in cultivation, they went rightfully; and if the superintendent of defendant made their going dangerous, defendant was chargeable with the consequences.

The moving about of the children upon the land where they were at liberty to go, while they were not actually employed, was as much an incident to their being there as is the loitering or playing by children outside the traveled part of the highway as they go upon it to school or upon errands. Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken. *Birge v. Gardiner* 19 Conn. 507; *Keffe v. Milwaukee &c. R.R. Co.* 21 Minn. 207; *Railroad Co. v. Stout* 17 Wall. 657; *Evansich v. Gulf &c. R. R. Co.* — Tex. — s. c. 6 A. & E. R. R. Cas. 182; *Nagel v. Mo. Pac. R. Co.* 75 Mo. 653; s. c. 10 Am. & Eng. Ry. Cas. 702.

In this case a shed in which a dangerous explosive was stored was left only partly enclosed, and its structure and location were such as naturally to invite the entrance of children either for play or for shelter from sun and rain. Children were rightfully near it; there was nothing in its appearance to warn them off; it was not fastened against their entrance; and there was nothing about it to indicate that they would do injury or be injured by going there. The box containing the explosives seems to have had more the appearance of a box discarded as of no value and with worthless

refuse in it than of a box which it was of the very highest importance should be guarded with sedulous care. It was never firmly fastened, and the only warning upon it was a word written upon a top board which was not always kept on. A man of ordinary prudence if told that so dangerous an article was so carelessly stored might well have deemed the statement incredible. We cannot under these circumstances say that the plaintiff's father was chargeable with fault in not suspecting the danger and warning his children away from it, or that the child himself was blameworthy in acting upon the childish instincts and propensities which combined with the negligence of defendant's servant to bring the danger upon him.

A new trial must be ordered.

The other Justices concurred.