Williams, J.,
dissenting. The purport of the instruction requested by the defendant, the refusal to give which is made a ground for reversing the judgments below, is, in its application to the facts of this case, that because the plaintiff, when he received the injury of which he complains, was on the defendant’s railway at the instance and procurement of the agent of the company, it was absolved from the duty of observing ordinary care for his protection, and liable only for wilful injury. It is to the maintenance of that proposition that the argument in the briefs for the plaintiff in error is chiefly directed. The statement of the proposition as there made is, that as the jury specially found “the evidence did not show that the boy (the plaintiff) was upon the property of the company for any purpose except the performance of his contract with the station agent, the proper person for the boy to look to for protection or indemnity would be the person (the agent)- who sent him into danger;” and that, “under these circumstances the company owed him no duty of protection except against wilful injury.”
*251 The evidence shows that the defendant had entrusted to its station agent the duty of keeping lighted a switch some distance from the station at all proper times, the method of doing which was by placing there at night lighted lamps that were left in the agent’s custody for that purpose. These lamps were carried from the station to the switch in time to be lighted before dark, and the next day taken back to the station to be cleaned and made ready for use at the switch at night. The defendant’s agent who had the full charge of this work employed the plaintiff, a boy ten years of age, to carry the lamps both ways between the station and the switch. He had been performing that service daily for several months before receiving his injury. While so engaged he was frequently noticed on the railway by the defendant’s employes in charge of and operating trains over the road at that place; and the jury found, in response to an interrogatory submitted by the defendant, that prior to the plaintiff’s injury, the conductors, engineers, and brakemen of the defendant’s trains had opportunities to know that “the plaintiff was accustomed to pass up and down the track to attend to the switch lights.” It was while the plaintiff was upon the defendant’s railway in the performance of this work that he found the torpedo and was injured by its explosion.
Independent of the plaintiff’s right to go upon the railroad at that place, because it had, by the acquiescence of the defendant, practically become a generally traveled highway, he was in no sense a trespasser or wrong-doer. Though the contract with the defendant’s agent was not binding on the company for want of authority on his part to make it, and no contractual relation existed between the company and the plain *252 tiff, he was, nevertheless, there in the performance of a service for the company at the express invitation of its agent in whose control that service had been, placed by the company. Even if notice to the defendant’s station agent of the presence of the boy on the-railway under those circumstances, and of his daily-custom of passing along the track while engaged in the work he was so employed to do, should not beheld sufficient to charge the company with notice of' such use, the defendant otherwise had the means of' knowing by the exercise of ordinary care, that the plaintiff in the performance of his service was required and accustomed to go from the station to the switch and back, and thus necessarily pass along the company’s track; from which it might properly be inferred that the defendant acquiesced in that use of its track. And, a person of ordinary prudence would reasonably expect that the boy would pick up-an attractive article like an unexploded torpedo left, exposed at that place, and following his childish instincts, would be likely to handle and explode it. The company should, therefore, be held to the use of ordinary care to prevent the exposure of the boy to that situation of danger. Harriman v. Railroad Co., 45 Ohio St., 11; Railway v. Shields, 47 Ohio St., 387; Powers v. Harlow, 53 Mich., 507.
Beside, it is held in the majority opinion in this case, as I understand it, that, as the plaintiff, when he was injured, was on the defendant’s road in pursuance of his engagement with the station agent, in the performance of a service for the benefit of the company, of which the agent had control, the duty of due care to protect the plaintiff against injury rested upon the company. In that opinion it is said that “as the boy in this case by his engagement with the *253 station agent was to perform a service in lighting and cleaning the lamps beneficial to the company on the •one hand, and to himself on the other, as he was to receive and did receive pay from the agent for his ¡services, we think that he was on the railroad at the time of the injury by the sufferance of the company, not as a servant of the company, nor as a trespasser, nor as a mere volunteer, but as one performing a service in his own behalf and for his own purpose and benefit, and entitled of right to be protected against the negligence of the servants of the company.”
In either view of the case, therefore, ordinary care was the measure of the defendant’s obligation to the plaintiff, and the refusal of the court to charge as requested, that the company was liable only for wilful injury, was not error.
The doctrine of fellow-servants appears to be inapplicable to the case. The cause of action arose in April, 1896, and the action was commenced in August of that year. The negligence charged as the proximate cause of plaintiff’s injury is not that of the station agent, but is that of the defendant’s employes in charge and control of its trains, a separate and distinct department of its service; so that, under our statute they were neither fellow-servants of the station agent, nor of the plaintiff if he may be called the servant of the company at all.
The reversal of the judgments for error in the charge given by the court, is based on the proposition that, because the plaintiff, when injured, was on the defendant’s roadway under his engagement with the •station agent, he lost the right which he otherwise had as one of the public that used the railroad, with permission of the company, as a travelled highway. If, however, as held in the majority opinion, the plain *254 tiff was rightfully on the railroad track when he was-injured, because he was there in pursuance of his engagement with the defendant’s agent, and that gave him the right to protection from the negligence of the defendant, it would seem to be unimportant that he should have that right for any other reason; for, if the company was liable for its negligence upon the ground stated, the plaintiff was entitled to recover .upon proof of such negligence, and no contributory negligence appeared, although he was not then in the use of the track as one having the right to it as a generally travelled way. In that view of the case the portion of the charge in question was unavailable as a ground of error, because immaterial. But no-reason is given, nor is any perceived, why both rights-may not coexist; nor why the exercise of one should destroy the other. Indeed, the use of the railroad track by the plaintiff when pursuing his employment, with the station agent was a use of it as a way of travel; and his right to use it as a travelled way was not impaired, nor that nature of its use changed, by the fact that the defendant’s agent requested him to-make that use of it, any more than it would be if he travelled over the track at the request of any other' person, or on an errand for his parents, or on his. way to school. The only effect of his employment by the defendant’s agent was to give him an additional ground for claiming that he was lawfully on the railway when he received his injury. -
But, if it were otherwise, and he was on the railroad only in pursuance of his employment, he was,, as has been seen, lawfully there; and, on that ground entitled to recover in his action, if, without fault on his part, his injury was caused, as he claimed, through the negligence of the company in the use of the tor *255 pedo; and hence, it became not only proper, but necessary, that the jury should be instructed as to what would constitute negligence in the use of such dangerous instruments by a railroad company where children should be expected to go. The instruction which the court gave on that subject is part of the charge for which the judgments below have been reversed, and is as follows: “It is negligence for the servants of such railroad company, wantonly and needlessly, and without notice, warning or other precaution, to place and leave exposed to observation, at such point, or place on its railroad, where the public, including children, are and have been so permitted by the company to travel and pass, an apparently harmless, but in fact highly explosive and dangerous object, like a signal torpedo, easily picked up and handled by children and likely to attract them, and known to such servants to be such.” This portion of the charge is taken from the syllabus in the Harriman case, supra. Its soundness as a proposition of law is not disputed. Its principle has been accepted and approved in many cases, not only in this state, but in. other states generally. Its applicability to this case, in either view that has been taken of it, seems evident. Beyond that instruction and the statement cf the plaintiff’s claim, there is nothing more in the charge complained of, except that the burden was on the plaintiff to show “that the railroad company permitted its tracks and right of way to be used by the public and by children in the manner that I have already stated to you, and that while he was there upon that track or passing along the same under the circumstances stated in his petition, that he was injured by the explosion of this torpedo, and that the torpedo *256 was placed there and left unexploded by the defendant, its servants or agents.”
Certainly it was not improper for the court to ■charge the jury that the burden was on the plaintiff to show that he was injured by the explosion of the torpedo, and that it was placed on the track where found, and left unexploded, by the defendant, its servants, or agents, as alleged in the petition. That burden was indisputably upon the plaintiff. The objection can only relate to that part of the charge which placed on the plaintiff the burden of proving “that the railroad company permitted its tracks and right of way to be used by the public, and by ■children,” as a public travelled way; and the ground ■of the objection stated is, that it was not applicable to the case because the plaintiff, when injured, was not using the track in that way, but was using it in pursuance of his engagement with the station agent.
If the plaintiff had the right to claim that he was lawfully upon the railroad when he was injured because it had become a public travelled highway at that place by the defendant’s permission, then it is conceded this charge would be correct, pertinent and material. And, if his right to be on the track is restricted to the ground that he was there in the performance of his engagement with the defendant’s agent, under the rule declared in the majority opinion, the proof required by this instruction was wholly unnecessary to his recovery. It simply imposed upon him a burden that was not incumbent on him, and in this respect might be harmful to him; but the imposition of such unnecessary burden on him could in no way be harmful to the defendant. On the contrary, it gave the defendant an additional chance of •escaping liability at the hands of the j.ury, if the *257 plaintiff failed to make the proof required by the instruction, a chance to which the defendant was not entitled. Instead, therefore, of this instruction being prejudicial to the defendant, it might have proven beneficial. In any aspect of the case the charge given affords no ground for a reversal of the judgment.
The testimony held to be incompetent relates to a transaction and conversation between a person of whom the witness speaks as a “trainman” and the agent in charge of the defendant’s railroad station, by which the former obtained from the latter in the station, a signal torpedo. These instruments are kept by the agents at railroad stations for the use of trainmen for giving signals in the operation of trains. The testimony is held incompetent because the witness did not first qualify himself to speak of the person referred to as a “trainman.” The occurrence to Avhich the testimony relates took place at the station near which the plaintiff was injured, and at a time Avhen a freight train had recently arrived. That station is situated in a small village.where few persons went, and the agent appears to have attended to all business at the station, even to the lamps at the switch some distance away. No other employes were required. These facts were before the court and jury when the witness testified. The identification of a trainman is not the subject of expert testimony. The identity of a conductor or engineer passing from a train just arrived into the station, is as obvious to common observation, as that of a policeman on his beat in a city. And it would seem as unnecessary to the competency of testimony of the acts of the former for whose use signal torpedoes are kept, in obtain- ' ing such instruments of the agent at the station where they are kept for that purpose, that the witness should *258 first testify lie knew the person to be a conductor or engineer, as it was that he should first testify he knew the person in charge of the station to be the station agent, or would be that he knew a policeman when he saw one, before he could testify that he saw a policeman make an arrest. If there was any doubt of the accuracy of the witness’ knowledge on the subject he was open to cross examination, and the weight of his testimony in that respect, as well as in all others, was for the jury.
For these reasons I am unable to concur in the majority opinion, or in the judgment.
Minshall, J., concurs in the dissenting opinion.