## Linderman *v.* Hershberger, Appellant (No. 1).

*Negligence—Infant—Unloading wagon at sidewalk—Case for jury—Damages—Permanent injuries—Evidence.*

1. In an action to recover damages for injuries to a boy eight years old, the case is for the jury where the evidence tended to show that defendant's driver at the time of the accident was unloading beer kegs from a wagon standing alongside the curb of a street, by tossing them across the sidewalk into a lot adjoining defendant's premises, that the child in running on the sidewalk was struck by one of the beer kegs,. and that the driver could have seen the boy in time, and could have prevented the accident, if he had taken the simple precaution of looking.

2. While the occupants of places of business upon public streets may have a right to use, in a reasonable manner, the sidewalk in front of their premises in receiving and sending out merchandise, yet the law imposes upon such person as it does upon all others using the sidewalk for any other lawful purpose, the duty to exercise their right with a due regard to the safety of pedestrians.

3. Where in such a case there is evidence that the wound on the boy's head was about two inches in length and extended in depth to the skull bone, and that there remained a large scar and a depression of the skull which in all probability would be permanent, and that the boy who was a bright boy with good health and memory had from the time of the accident become nervous, with his memory affected and with periods of pain in his head, the evidence is sufficient to justify a jury in awarding damages for permanent injuries.

*Appeals—Assignments of error—Charge of court—Stenographers.*

4. Assignments of error to the charge of the court will not be considered where the record fails to show any request before verdict that the charge be reduced to writing from the stenographer's notes, and filed of record.

Argued April 13, 1911. Appeal, No. 64, April T., 1911, by defendant, from judgment of C. P. No. 3, Allegheny County, Nov. T., 1906, No. 32, on verdict for plaintiff, Mark Linderman, by his father and next friend, v. L. C. Hershberger. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before KENNEDY, P. J.

Verdict and judgment for Mark Linderman for $1,500 and B. F. Linderman for $950. Defendant appealed.

*Errors assigned* were (1) in refusing binding instructions for defendant; (2) in submitting to the jury the question of permanent injuries; (3–5) portions of charge, quoting them.

*Levi Bird Duff*, with him *Thomson & Thomson*, for appellant.—It is the duty of the court to view the facts as they appeared to the driver at the time of the accident, and so viewing them he was not guilty of negligence: Flanagan v. People's Passenger Ry. Co., 163 Pa. 102; Hestonville, Mantua & Fairmount Pass. R. R. Co. v. Kelley, 102 Pa. 115.

The court did not give the jury the correct rule of damages as to loss of earnings: Woeckner v. Electric Motor Co., 182 Pa. 182; Peters v. R. R. Co., 225 Pa. 307; Penna. R. R. Co. v. Zebe, 33 Pa. 318.

*Meredith R. Marshall*, with him *Thos. M.* and *Rody P. Marshall*, for appellee.—There was sufficient evidence of negligence: Rachmel v. Clark, 205 Pa. 314; Prinz v. Lucas, 210 Pa. 620; Casey v. U. S. Express Co., 214 Pa. 1; Ledig v. Brewing Co., 153 Pa. 298; Drinkwater v. Cooperage Co., 208 Pa. 649; Ryan v. Ardis, 190 Pa. 66.

The minor plaintiff being only eight years old, his contributory negligence was necessarily a question of fact for the jury: Brown v. Shellenberg, 19 Pa. Superior Ct. 286; Prinz v. Lucas, 210 Pa. 620.

There was sufficient evidence of permanent injury: Smedley v. Ry. Co., 184 Pa. 620; Benson v. Electric Ry. Co., 228 Pa. 290; Amos v. Ferry Co., 228 Pa. 362.

The third, fourth and fifth assignments of error relate to the charge of the court and are not lawfully of record before this court for consideration as there was no request, before verdict, that the charge be reduced to writing from the stenographer's notes and filed of record, and

it does not appear of record that such request was made: Curtis v. Winston, 186 Pa. 492; Scott v. Smaltz, 10 Pa. Superior Ct. 44; Stout v. Quinn, 9 Pa. Superior Ct. 179; Corkery v. O'Neill, 9 Pa. Superior Ct. 335; Patterson v. Groetzinger, 10 Pa. Superior Ct. 327; Kerns v. Insurance Co., 11 Pa. Superior Ct. 209; Com. v. Bradley, 16 Pa. Superior Ct. 561; Glenn v. Strickland, 21 Pa. Superior Ct. 88; Leonard v. Leslie, 23 Pa. Superior Ct. 62; Matushek Piano Mfg. Co. v. Engberry, 30 Pa. Superior Ct. 543.

OPINION BY RICE, P. J., July 13, 1911:

The appellant kept a wholesale liquor store on one of the principal streets of the borough of McKees Rocks. Adjoining his store was a vacant lot, in which he stored empty beer kegs.  Between six and seven o'clock in the evening of July 6, 1906, his driver was unloading beer kegs from his wagon, which was standing alongside the curb, by tossing them across the sidewalk into the lot.  At this time the horse was headed toward the south, and the driver faced the north.  The plaintiff, then being between eight and nine years old, was running south on the sidewalk and was struck on the head by one of the beer kegs thrown by the defendant's driver, and was knocked down.  We shall refer to his injuries hereafter.  According to the testimony adduced by the plaintiff, the street was the main thoroughfare of the borough and was much traveled; if the driver had stood erect he would have faced the boy, as he was running in his direction; he was stooped over and had his head down as he was tossing the kegs into the lot "as fast as he could;" and there was nothing to prevent him from seeing the boy, if he had looked.  It is no answer to say that he did not see the boy, if, as the evidence would warrant the jury in finding, he would have seen him had he taken the simple precaution of looking.  Nor is it any answer to say that the defendant had a right to unload his wagon by tossing the kegs across the sidewalk into his lot.  While the occupants of places of business upon a public street may have a right

to use, in a reasonable manner, the sidewalk in front of their premises in receiving and sending out merchandise, yet the law imposes upon such persons, as it does upon all others using the sidewalk for any other lawful purpose, the duty to exercise their right with a due regard to the safety of pedestrians: Vallo v. U. S. Express Co., 147 Pa. 404. Granting that the defendant's method of unloading his wagon was lawful, he was, nevertheless, bound to exercise reasonable care in pursuing it, and this duty implied the necessity of having regard to the time and place. To pursue it at this time of day, upon a much traveled street, without keeping a lookout for the safety of pedestrians, would not be the exercise of care according to the circumstances. Especially is this true if at the time and place children were likely to be running along the sidewalk. "Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them must calculate upon this, and take precautions accordingly." COOLEY, C. J., in Powers v. Harlow, 53 Mich. 507, quoted with approval in Rachmel v. Clark, 205 Pa. 314. Under the facts which the jury were well warranted, by the testimony, in finding, the withdrawal of the case from them upon the ground that there was no proof of negligence for which the defendant was responsible, would have been error. Equally erroneous would have been binding direction that, notwithstanding his immature years, the plaintiff was guilty of contributory negligence. The court was right in refusing the defendant's first point, and, therefore, the first assignment of error is overruled.

The second assignment of error is to the refusal of the defendant's point that the evidence was not sufficient to warrant the jury in awarding damages for permanent injury. It would serve no good purpose, and would unduly prolong this opinion, to recite all the testimony upon this subject at length. And, manifestly, it would be going beyond our province to attempt to decide conflicts

of testimony or to pass on the credibility of witnesses. A reference to a few of the principal facts testified to will be sufficient for present purposes. The wound was about two inches in length, and extended in depth to the skull bone. Testimony was given by the plaintiff's parents and others, that before the injury he was a bright boy, with good health and memory, but from the time of the injury he has been nervous, his memory has not been good, and he has suffered pain from time to time in his head. This testimony, standing alone, might perhaps be insufficient to establish the alleged causal connection between the injury and the conditions described. But there was other testimony. The physician who attended him until the wound healed testified that he called upon him several times afterwards. He says: "I doctored him until the cut healed and have been called to see him several times since. He would take some kind of funny spells; kind of out of his mind." Again, upon being asked to what he ascribed the attacks of which he had spoken, he said: "Well, I have known him quite a long time before he was hurt and I knew he never had any of these spells before. Shortly after the injury he had these spells and I think it was from the cut on the head. I do not know of anything else that would cause them." Another surgeon, who examined the plaintiff about the time of the trial, but not with the knowledge that he was to be a witness, testified: "There is a scar, a large scar on the side of his head, and what appears to be a depression of the skull." Again he says: "There is a large scar, which appears to lie over a depression of the skull. Q. And in your opinion is that permanent? A. Oh yes, it is permanent. Q. Will it ever be any better? A. That scar—I don't suppose that will ever be any better unless there is something done for it. Q. I am speaking of the depression; will the depression ever be any better? A. No, that doesn't come out. Q. Unless something is done for it? A. Unless something is done for it. Q. What would have to be done, Doctor? A. Well, I suggested to the father of the boy

that it would be well enough to make an exploration, and if it would appear, when the skull was bared, that there was a depression there or might be of the inner table of the skull to a greater extent, that then it should be trephined." Upon cross-examination, after examining the boy upon the witness-stand, he said: "The scar is up on the head, and there appears to be quite a little depression there, what they call a culcus, or depression. That has that appearance, and the extent of it could only be determined when you cut down to the skull." It might be inferred from the testimony of some of the defendant's witnesses, that the injury was simply a scalp wound which ceased to be of any detriment to the plaintiff after it had healed. But, as already suggested, it is not for us to pass upon the credibility of the witnesses. Damages will not be awarded to compensate for losses not yet experienced, on mere conjectural possibilities that such loss will occur. But it is not necessary to prove, to a demonstration, that the injury to an infant will result, when he arrives at the ordinary earning age, in a total or even partial deprivation of earning power. The question is what is probable, in view of the nature and ordinary consequences of the injury and the differences in his physical, mental, or nervous condition, that have developed and continued up to the time of trial—particularly if a considerable period of time has elapsed—and are traceable, with reasonable certainty, to the injury. The idea is clearly expressed in Amos v. Delaware River Ferry Co., 228 Pa. 362. There it was shown, by medical testimony, that not only was the plaintiff's disability likely to be permanent, but that no limit in time, other than her life, could be put, with certainty, to the pain and suffering which she would endure in consequence. For mitigation of this pain, it was shown that electrical and other treatment would be required. It was objected that, because it was not shown with greater degree of certainty how long such treatment would be required, it was not to be considered in estimating plaintiff's damages.

Speaking of this objection, Justice STEWART said: "In this, as in all elements of damage which have regard to the future, it is a question of likelihood as to continuance; but that is always for the jury. A sufficient basis was here afforded by the evidence for an intelligent judgment, and that was all that was required." Applying this principle here, we are unable to say that there was no testimony which would warrant the jury in finding that the injury to the plaintiff was of a permanent nature. It would not be going too far to say that the scar itself, together with the depression, the extent of which could only be determined by a surgical operation, was a permanent injury, even though the evidence would not warrant a finding that the subsequent changes in the physical, mental and nervous condition of the plaintiff were attributable to it. This assignment is overruled.

The remaining assignments relate entirely to the charge of the court, and it is strenuously objected that they cannot be considered because the rule laid down in Curtis v. Winston, 186 Pa. 492, was not observed. We have had occasion to consider this question in the case of Brown v. Pitcairn Borough, 00 Pa. Superior Ct. 000, in which we herewith file an opinion. The record in this case is in substantially the same condition as was the record in that case, and, upon the authority of Curtis v. Winston, the appellee's objection is sustained and these assignments are dismissed.

The judgment is affirmed.