## LIBERTY PAPER BOARD CO, INC v POE

Ohio Appeals, 7th Dist, Jefferson Co

Decided June 10, 1932

Smith, Francis & Irvine, Steubenville, and Harry B. Chalfant, Steubenville, for plaintiff in error.

Brown & Ong, Steubenville, for defendant in error.

**OPINION**

By POLLOCK, J.

The first error complained of is in the charge of the court. The court seemed to charge the relation of master and servant, using terms of employer and employee and laying down rules which the plaintiff in error claims do not apply to this case. We learn from the contract between these parties that Poe agreed to do the work of painting these stacks for a certain sum of money. In McGee v Stockton et, 103 NE, 388-390, it is said:

"It is well settled that where one lets a contract to another to do a particular work, reserving to himself no control over such work except the right to require it to conform to a particular standard when completed, he is not liable for the negligence of the party to whom, the contract is let. When the person employing may prescribe what shall be done, but not how it is to be done, or who is to do it, the person so employed is a contractor, and not a servant."

In Thompson on Negligence, §680, it is said:

"Roundly stated, it is that the relation of master and servant does not subsist between the proprietor and the servant of the contractor; and therefore those obligations which the law imposes upon the master for the protection of one injured while in his service, do not rest upon the proprietor, but upon the contractor. On the other hand, the servant of the contractor must be deemed to be upon the premises of the proprietor by his invitation, express or implied; and therefore he owes him the same duty of guarding him against the consequences of hidden dangers on the premises, that a proprietor would in any case owe to a guest, a customer, or other person coming by invitation upon his premises."

It was error for the court to charge the rules of employer and employee.

We then come to a consideration of what the duties of the person who invites a party to come on to his premises to do some work, and what is the liability of the party doing so.

Libby Glass Co. v Gronau, 116 Oh St, 404; 155 NE, 500.

This is a case for doing like work under like circumstances except that the injured party had some notice of warning to be careful and also admitted he knew the condition of the roof. In the opinion the Supreme Court said:

"Defendant had the lawful right to use asphalt covering for its building and in that respect the court charged that it owed the plaintiff no duty to construct a roof otherwise * * * He also testified that he knew of the composition of the asphalt roof on the building and that this roof was not as strong as metal roof and was not very solid."

In Springfield Electric Light & Power Company v Calvert, L.A.R. (n.s.) 784, it is said:

"The law is well settled that an owner or occupant of land who, by invitation, express or implied, induces or pleads others to go upon premises for any lawful purpose, is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist without timely notice to the public, or to those who are likely to act upon such invitation; and, if there are hidden dangers upon the premises, he must use ordinary care to give persons rightfully upon the premises warning thereof; and that the owner owes such duty to an independent contractor or his servants while working upon his premises."

1 Thompson on Negligence, §979.

Webster Mfg. Co. v Mulvanney, 188 Ill., 311; 48 NE, 168.

Illinois C. R. Co. v Hopkins, 200 Ill., 122; 65 NE, 656.

Drennan v Grady, 167 Mass., 415; 45 NE, 741.

Samuelson v Cleveland Iron Min. Co., 49 Mich., 164; 43 Am. Rep., 456; 13 NE, 499.

Powers v Harlow, 53 Mich., 507; 51 Am. Rep., 154; 19 NW, 257.

Bennett v Louisville & N. R. Co., 102 U. S., 477; 26 L. Ed., 235.

Evansville & T. H. R Co. v Griffin, 100 Ind., 221; 50 Am. Rep., 783.

We think that this states the liability of the employer where a party comes on his premises to perform an agreed contract.

The question was also before the Supreme Court of the United States in Bennett v Railroad Company, 102 U. S., 577:

"The owner or occupant of land who induces or leads others to come upon it for a lawful purpose is liable in damages to them (they using due care) for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and he negligently suffered it to exist, without giving timely notice thereof to them or the public."

In Sisler v Coal Co., 41 SE, 216, it is said: "In Bright v Barnett & Record Co., 26 L.R.A., 524, the law is, I think correctly stated as follows: 'With few exceptions, the cases agree in holding that the premises upon which an independent contractor is required to labor, for the benefit of the owner must be reasonably safe for the purposes of such labor, so far as freedom from concealed danger is concerned.' We may thus say that, if the decision of this case does in fact rest on any duty arising merely from the relation of the parties because of the contract between them, the unsafety of the premises must be such as was known, or by fair care could have been known to the defendant, and was unknown, and by fair care could not have been known to the contractor; for it is very clear that if the plaintiff knew, or if by fair care could have known, of the work which injured him, he cannot recover. Wharton Neg., §833. It is well established that if one knows, or by fair care could know, of danger threatening him, he cannot encounter that danger, and charge his injury upon the owner of the premises, even though that owner be in fault."

In order to make the plaintiff in error liable he must have known that the roof was not safe or by ordinary care he could have known it, and further than that if the defendant in error knew, or by ordinary care for his own safety could have known that the roof was unsafe, he can not recover.

The person in charge of the plant at that time was Harry S. Cutler, who had charge of the office and sales room, and who entered into this contract with the defendant in error, and Albert Earhart, who had charge of the operation of the plant at the time the contract was let and while the work was being performed. Nothing was said by either of these parties representing the plaintiff in error as to the condition of the roof, and no questions were asked. From the location of these stacks, which were within a few inches of the eave of the roof of the boiler building, it must have been in contemplation of each of these parties that on doing this work the defendant in error would go on the roof of the boiler building and at least use a part of it next these stacks. Defendant in error went to work on the morning of this accident without making any inquiry, took up their ropes and other appliances for doing this work, and about ten gallons of paint, which was furnished by the plaintiff in error. The first nineteen feet of this roof and next the eave was entirely safe. The remaining fourteen feet were from the evidence and pictures (both parties introducing the same pictures), it appears that the asbestos of the upper fourteen feet was broken, some holes in it, and there was what is called an ash blower near the comb, and there was a plank laid from the metal part of this roof over the asbestos to this blower, which evidenced that persons going up to the blower used this plank. There is no evidence of any hidden danger or crack. The only thing that broke was one of the asbestos shingles, which was open and could be seen by every one. The two managers of the plaintiff in error testified that they had never been on this roof and knew nothing about its condtiion as to being safe or otherwise. So far as the plaintiff in error is concerned, there is another condition. As we have said, nineteen feet of the roof was safe, while the defendant in error testifies that it was necessary to use more roof than that, and a party called by him, who testifies to having done this class of work, said that it was necessary to use all of this roof, yet there is no evidence indicating that the managers of the plaintiff in error knew that it would require more than nine-

teen feet of the roof to do this work, and no evidence that their attention was called in any way to that fact. So we fail to see under the rules above stated where there was any negligence on the part of the plaintiff in error.

Looking then to the evidence of the defendant in error as to his own care, he testifies to having looked over this roof, saw the different kinds, and possibly says he walked over it. In being asked if he looked, "Didn't you see,—why didn't you see the holes, why didn't you see them, why didn't you see the broken asbestos," he answered, "Well, I had a lot of stuff scattered around over that. Probably something was lying on it. I didn't see it." If this was the reason he could not see the holes, which are plain and obvious to everyone, it was his own acts that prevented him from seeing the condition of this roof. His deposition was taken some time prior to the trial and certain questions were asked him on the trial of this case, that if he did not testify in the deposition in the following way: "If a person standing on the roof and looking at it, he could see the place where it had been patched, couldn't he?" The answer was "Yes." His answer in trial, "Yes, he ought to see it. It's half one kind and half the other. Anybody ought to see it." And he was also asked in his deposition, "And he could also see the place where it was worn out?" and he answered, "Yes." He was further asked: "From your experience in doing this kind of work you knew the reason why it was patched, was because it had been worn out, and did you answer ' Of course'?" and he answers "Yes, sir." He was then asked if this question asked him in his deposition, and he didn't answer, "So long as you were standing on the rafters it was safe, but when you stepped where there was no rafters that was where the danger came in, and did you answer 'Yes'?"

So that we think under the rules governing the duties of the defendant in error, that he failed to use ordinary care.

At the close of all the evidence there was a motion made to direct a verdict, which was overruled. We think that the court should have sustained this motion and directed a verdict. For the reasons stated the judgment of the court below is reversed and final judgment entered in favor of the plaintiff in error. Exceptions noted.

Judgment reversed.

ROBERTS and FARR, JJ, concur in the judgment.