NEWBERRY v. CHICAGO LUMBERING CO.

1. WILLS—DEVISEES—RIGHTS OF ACTION—TRESPASS ON LANDS.
   The right of action for unlawfully cutting timber on lands previously devised accrues only to the devisee.

2. ASSIGNMENTS—EFFECT—INTEREST TRANSFERRED.
   An assignment by the devisee of lands of his right of action for unlawfully cutting timber thereon passes nothing where, previous to the assignment, he had settled with the trespasser and given up such right for a valuable consideration.

3. APPEAL AND ERROR — PLEADINGS — AMENDMENT — DISCRETION OF COURT—HARMLESS ERROR.
   Where, in an action of trover for the conversion of timber, the defendant claimed upon a second trial that plaintiffs' assignor had waived his right of forfeiture by extending the time for removal of the timber, and it appears that the court considered this a proper defense, and was disposed to allow such an amendment of the notice accompanying the plea as to cover it, and that all knew that defendant supposed the defense to be covered by the notice as amended, the discretion of the court in allowing the amendment will not be interfered with, and no prejudicial error arising from variance appears.

4. PLEADING—INCONSISTENT DEFENSES—ELECTION—ESTOPPEL.
   The question of estoppel arising out of election of defenses (if the rule applies to defenses) depends upon there being a

necessary inconsistency between the two claims, and a duty to choose between them; and in an action for the conversion of timber there is no inconsistency between a claim that plaintiffs' assignor had settled the matter before assignment, and a claim that he had waived the right of forfeiture and extended the time to cut the timber.

5. VENDOR AND PURCHASER — STANDING TIMBER — TIME TO REMOVE — FORFEITURE — WAIVER — SUFFICIENCY — STATUTE OF FRAUDS.

The right to claim and enforce a forfeiture of standing timber sold by written contract may be waived by parol.

6. DEEDS—QUITCLAIMS—EFFECT.

A quitclaim deed of lands conveys no interest in standing timber thereon which has been previously conveyed by the owner by written instrument, the right of forfeiture therein reserved having been waived.

7. LICENSES — REVOCATION — INTEREST OF LICENSEE — SALE OF STANDING TIMBER.

A purchaser of standing timber has a license coupled with an interest, and if the vendor's right of forfeiture for nonremoval is waived, the license is not revocable during the continuance of the interest.

8. VENDOR AND PURCHASER—STANDING TIMBER—NONREMOVAL—FORFEITURE—WAIVER.

In an action of trover for the conversion of timber, evidence examined, and *held*, to support a finding that the vendor's right of forfeiture for nonremoval had been waived prior to the assignment of his rights to plaintiffs.

9. COMPROMISE AND SETTLEMENT—CLAIM FOR CONVERSION—VALIDITY.

Where a creditor of an estate filed a bill to reach the interest of the heirs in a contract under which defendant was cutting timber on lands belonging to a decedent, which action resulted in the heirs giving defendant bonds of indemnity, there was no legal impediment to an agreement involving the settlement of the suit before decree, the surrender by defendant of its indemnity bonds, and the relinquishment by the sole heir and assignee of the claimant of all claims against defendant for trespass growing out of the timber contract.

10. PRINCIPAL AND AGENT — AUTHORITY OF AGENT — COMPROMISING CLAIMS.

Where the administrator of an estate was given a power of

attorney by the heirs authorizing him to settle and adjust all accounts with any person and to compromise and conclude the same, he had authority to compromise a claim of the heirs against defendant for trespasses in cutting timber on lands of decedent after expiration of the time for removal, and to waive a right of forfeiture thereof for nonremoval.

Error to Schoolcraft; Steere, J. Submitted June 4, '1908. (Docket No. 15.) Decided September 10, 1908.

Trover by Jay L. Newberry and Lou J. Le Veque against the Chicago Lumbering Company of Michigan. There was judgment for defendant, and plaintiffs bring error. Affirmed.

*George P. McCallum* (*L. C. Holden* and *Frank P. Sullivan*, of counsel), for appellants.

*C. W. Dunton* (*C. R. Brown*, of counsel), for appellee.

HOOKER, J. The plaintiffs brought and were defeated in an action of trover for the conversion of timber cut by the defendant upon certain lands. The cause is now before us on a writ of error issued at the instance of the plaintiffs. It was tried before the circuit judge without a jury, and a finding of fact and law was filed. The land from which defendant cut the timber consisted of 280 acres which had belonged to James Gibb Ross, of Quebec, at the time of his death, on October 1, 1888. Ross left a will, in which he devised all of his property to his brother, Frank, with directions to use one-half for charities, and the other half for himself, except £2,000, which he was directed to send to Miss Mary Frame. It was 14 years after the death of James Gibb Ross before this will was discovered, and admitted to probate in Marquette county, Mich., on July 1, 1903. At that time the estate had been in the hands of an administrator continuously after 1889, and much of it had been distributed among creditors and heirs of James Gibb Ross. If the

record shows when this action was commenced, we have been unable to ascertain readily. Reference to the original record shows, however, that a declaration was filed December 16, 1905, which states that defendant had been previously summoned. Before that time the administrator had rendered his final account, which was allowed. The residue of the estate was assigned to Frank Ross, the administration closed, and the administrator discharged by order of Marquette probate court, dated July 6, 1903, three days after the admission of the will to probate. While the property was being administered as that of an intestate, presumably under the misapprehension that Ross had left no will, persons apparently recognized by all parties to this action to have been the heirs of James Gibb Ross, acting through one James Connolly, as attorney in fact, sold by two separate contracts to the defendant all of the pine timber on upwards of 24,000 acres of land belonging to the estate, in which the lands involved in this case were included. These contracts fixed a time limit for the cutting and removal of said timber at September 9, 1899, and they contained the following provision, viz.:

"And if not so removed by said date, the right to remove the same shall be forfeited."

Full payments were made according to the terms of the contracts of sale, and the contracts were ratified by Frank Ross and the others interested in the estate; no controversy being raised as to the validity of the transactions. The first contract bears date September 6, 1889, the second October 26, 1891. In November or December, 1898, defendant applied to Connolly for an extension of time to cut the timber upon the land included in this action. At this time Connolly was the Michigan representative and general agent of the Ross heirs, and administrator of the estate. Connolly informed defendant that the time would be extended on same, and subsequently encouraged defendant to expect an extension of time on other lands.

On December 19, 1898, Connolly sent defendant a quit-claim deed of the timber, with a letter saying that he thought "it was all that defendant would require." This quitclaim covered the 40 acres of the land on section 24 included in this action. It was signed "John Connolly, Administrator," and it had but one witness. The defendant went on and removed the timber. Connolly some years afterwards challenged defendant's right to continue cutting, and between February and April, 1900, caused an estimate to be made of the timber then standing on the lands, and some correspondence passed between Connolly and defendant about the matter. Apparently on December 15, 1900, Connolly had been succeeded as administrator by one Russell, and on that day the latter filed a bill against defendant and the Ross heirs. It charged that the claim of one Sullivan for $100,000 had not been paid, and that Connolly and the heirs had sold land and timber, and paid some claims against the estate, and distributed the remainder of the estate, that Connolly had been removed as administrator, and Russell appointed in his stead. The bill also alleged the making of timber contracts with defendant, and prayed an accounting by all defendants in that suit and an injunction restraining further cutting by the defendant in this action, and application of the value of the timber cut to complainant's claim. The cause was heard on pleadings and proofs, and an opinion was filed, in which the court held that the defendant in the present action must account to the administrator for timber cut and converted by it during the six years next preceding the filing of the bill from the lands embraced in the contracts which were owned by the Ross estate. The injunction was modified during the pendency of the proceedings, and defendant allowed to continue cutting, provided it should report to the court the amount of timber it should cut. Before a final decree was made, and on April, 1903, the Sullivan claim was paid, and the bill was dismissed by consent of all parties. When the Sullivan claim was filed, the Lumbering Company (defendant in this action)

was still indebted to the Ross estate to an amount of $11,000 or $12,000 for timber. It declined to pay, without being indemnified for any damages and costs it might sustain on account of the prosecution of the Sullivan claim, and thereupon the Ross heirs gave it a bond for $16,000 to protect it against the Sullivan claim. This was in November, 1895. At the same time the Bank of Quebec gave defendant a written guaranty to the extent of $16,000 as indemnity against loss that it might suffer by reason of paying the balance due for timber in case the claim of Sullivan should be sustained. The effect of the settlement which led to the dismissal of the Russell bill is one of the disputed questions in the case, and we will defer further reference to the facts in connection with it until that subject is discussed, except to say that the settlement was made on the evening of April 15, 1903.

The appearance of the plaintiffs in this transaction occurred in February, 1904, when Newberry and Connolly made a deal for securing by plaintiffs a quitclaim deed from the Ross heirs of some 10,000 or 12,000 acres of land in Michigan. One deed dated February 22, 1904, covered lands on the Lower Peninsula. The other, covering Upper Peninsula lands, was dated February 24, 1904. In both the Ross heirs were named as grantors and plaintiffs as grantees. The nominal consideration for each deed was $1. They contained provisions assigning all rights of action of the grantors for trespasses and nonpayment of taxes under land contracts. Connolly sent these deeds to Ross & Co. by mail for execution, suggesting that, when they should have examined the deeds and found them satisfactory, they wire Connolly that they would not accept less than $1,000 for the lots described; $450 only having been offered. Without waiting for a reply, Connolly on February 24, 1904, acting as attorney for Frank Ross and other Ross heirs, executed to the plaintiffs a quitclaim deed purporting to assign and transfer to plaintiffs, their heirs and assigns, the Ross interest in the lands therein described, and all rights and claims

the Ross heirs had against any person, firm, or corporation whatsoever for the unlawful cutting and removing of timber or trespassing upon any parcel, and for all neglect or refusal to pay taxes upon such lands as they had agreed to pay under contracts. Connolly afterwards telegraphed Ross & Co. :

"Newberry refuses to increase offer, will accept deeds executed by John Ross, think better accept."

He was immediately advised (March 7th) that "John Ross could not sign deed, that he had no power of attorney from Frank Ross." In the same letter he was informed that "we do not think that you are getting enough for those lands, and do not like the way you have made up the deeds, too much of the blanket about them." Defendant claims that Ross declined to sign deeds containing the clause assigning claims for trespass or neglect to pay taxes; but this is disputed. On May 11, 1904, Frank and John Theodore Ross, in consideration of $1, and other valuable consideration, for themselves and as attorney in fact and trustee for William and Anna Ross and Frances Ella Ross Fitzgerald, and William Patterson, executor of William Ross, deceased, gave a quitclaim deed to plaintiffs in this case for 6,000 acres, including the land in controversy in this action, and on June 3, 1905, Frank Ross, at the solicitation of both Connolly and Newberry, executed the following instrument:

"I hereby sell, assign, and transfer to Jay L. Newberry, of Petoskey, Michigan, and Lou J. Le Veque, of Marquette, Michigan, and to their heirs and assigns, all claims I have against any person, firms or corporations, for nonpayment of taxes or unlawfully cutting or unlawfully removing timber from any and all lands heretofore sold and conveyed to them by me.

" Witness my hand and seal this 3rd day of June, 1905.
          [Signed]          "FRANK ROSS."

It was not delivered until after July 13, 1905, and no money was paid to Frank Ross or to the representatives of the Ross estate by plaintiffs in connection with this

deal beyond the payment of the $450, paid the year before on delivery of the deed.   The court found that:

"Newberry some time after brought suit in the United States court in the name of Frank Ross to recover for the alleged trespass involved in this suit; but, when Frank Ross learned of the same, he repudiated the action, and ordered the suit discontinued, which was done."

Under the caption, "Conclusions of Law," the court has stated other facts in connection with his legal conclusions.   As they are essential to an understanding of the case, we insert the "Conclusions of Law:"

"As this case now presents itself, it is the opinion of the court that the amount of timber cut from the lands in question by defendant, and time of cutting, are immaterial, as the same result would be reached if plaintiffs' claims as to time and amount were conceded to be true. The views already expressed by this court in deciding the case on the previous trial, as to the force and effect of the settlement of the Russell chancery suit, are adhered to. It was then said:

" 'When the timber was severed from the land, it became personalty.   It had all been severed from the land in sections 22 and 12, in town 45 north, of range 19 west, when the chancery suit of Russell, Administrator, v. Chicago Lumbering Company and Others, was heard and settled.   The court in that case acquired jurisdiction to stay waste, enjoin removal, require an accounting for all timber cut or taken, and to render a personal decree against the defendant for the value of same.   The court in that case held that defendant must account to complainant for the timber cut and removed from the lands described in this case, but, before a decree was entered, negotiations were had, and all matters in controversy finally settled.   The question of title to and value of the timber then cut from the lands referred to in this case was involved in that.   Those matters entered into the settlement as discussed and adjusted between the parties in interest.   By that settlement the defendant took title to all severed timber, and is thereby now in a position to both deny plaintiffs' title and show title in itself.   While the Russell chancery suit was apparently begun by him, as administrator, for the purpose of protecting and collecting the Sullivan claim, yet the court, at the same time, acquired jurisdiction over this timber and authority to compel the defendant to account for same.   The settlement which followed included all matters in controversy over

which the court had jurisdiction. The litigation and settlement were not only between Sullivan, the administrator, and the Ross estate, but between the defendants in this case and Frank Ross, and the other defendants in that, and all questions as to the timber cut by defendant from these lands to that date were fully adjusted and settled. In that view of the case, there can be no recovery by plaintiffs for any timber cut from sections 12 and 22, in town 45 north, of range 19 west.'

"It was and is the opinion of the court that the unsevered timber yet remaining upon the land was not within the purview of that settlement, as it appeared by the record of the case, and that such record did not protect defendant in subsequently cutting and removing the pine then standing on the northeast quarter of the southeast quarter of section 24, in town 45 north, range 18 west. As the case then presented itself, it was also held that Connolly's quitclaim deed of the timber upon that 40 was unauthorized and did not amount to a license to cut. That Connolly did extend the time to cut the timber standing upon that 40, and did waive the right of forfeiture to the full extent of his ability, both by parol and in writing, is beyond question. It now appears to the satisfaction of the court, by the testimony produced in this case, that Geggie, the authorized agent of Ross and representative of the Ross estate, ratified Connolly's act by an agreement which he made with Charles R. Brown, the authorized attorney of defendant, on April 15, 1903. This agreement was in parol, and made the evening before the final settlement of the Russell suit. The matter of extension of time and waiver of forfeiture was not, in the opinion of this court, the subject-matter of the Russell litigation, which on the record would be disposed of by a settlement and discontinuance of that suit, but the fact that this agreement was entered .nto in connection with negotiations relative to the settlement of the Russell suit would not destroy its validity if the minds of the parties actually met, and such an agreement was actually entered into between them. Whatever room there was for contention at the last trial, it is now clearly settled that the time for cutting and removing standing timber can be settled by parol. *Wallace* v. *Kelly*, 148 Mich. 336.

"It is strenuously urged and argued in this case on behalf of plaintiffs that both the testimony offered and defenses made at the first trial of this case and the present one are contradictory and inconsistent, that 'an examina-

tion of the pleadings and evidence upon the first trial of this case shows that, under the defense then made, defendant was liable in any event for the timber cut from section 24. The testimony produced by the defendant showed that the settlement took place in April, 1903. The timber was not cut on section 24 until the summer of 1904, consequently could not be included in the settlement. The object in changing the defense to extensions and ratifications is to cut off plaintiffs' right to recover for that timber. Having been defeated upon the first trial on the theory adopted by defendant's counsel, who alone furnished the testimony to support it, the same counsel now proposes to adopt another theory to overcome the fate of his first efforts, and again he furnishes the testimony to support his new position.' In view of that contention, and to give the plaintiffs the full benefit of their exception, the testimony of C. R. Brown, George P. Brown, and James Geggie is made a part of the findings of fact. It is true that the testimony of C. R. Brown, given upon the former trial, did not go into detail or state specifically that Connolly's extensions of time were discussed, but rather, in a general way, was to the effect that all matters in difference between the parties were settled. Yet it does not seem to us to be inconsistent with the testimony given by him at the present trial, which is more elaborate and goes more into details, being also substantiated by that of Geggie and George P. Brown, who did not testify upon the former trial. So far as he went upon the first trial, his testimony appears substantially as upon the second. It is true the contention was then made to the court that the settlement of the Russell suit included and disposed of all matters between the parties, including the right to cut on section 24 also, and the testimony then offered was not sufficiently full to enable the court to find, as a matter of fact, that there had been an express extension of time and waiver in relation to section 24. But the failure of defendant to produce fully the testimony upon that point, and the refusal of the court to take the view contended for by its counsel, would not, upon this trial, estop it from the benefit of a parol waiver of forfeiture, now clearly proven by the testimony of more than one witness, and undisputed. The conclusion is reached in this case that Ross, by his general land agent, Connolly, and also by his general business manager, Geggie, who acted in the final settlement of all matters in difference between the Ross estate and

defendant, waived conditions subsequent in conveyance of the timber in question, thereby giving defendant legal right to cut the timber from section 24, as it did, and that thereafter Ross neither had nor made any claim against defendant.    When he assigned to plaintiffs all claim he had for trespass and nonpayment of taxes on lands previously conveyed to them, he neither had nor claimed, nor intended to convey, any claim or claims against the defendant for unlawfully cutting or removing the timber in question.    Judgment will be entered in favor of defendant, with costs of suit."

This cause has been tried twice.    Upon the first trial the court found that the settlement in 1903 was a sufficient defense as to all' claims of plaintiffs for timber cut before the settlement but not as to timber on section 24, which had been cut afterwards, and a judgment for $5,274 was rendered in plaintiffs' favor for the later cutting.    A new trial was granted on motion of the plaintiffs. We understand that this motion was based on affidavits tending to contradict the alleged settlement as proved by defendant on that trial.    Upon the second trial it was claimed by defendant, not only that the settlement was made, thereby extinguishing all claims that Frank Ross then had, if he had any, but that, though the settlement should not be established, there was a waiver of all right of forfeiture, and an extension of time for the removal of all timber from the land by agreement between the parties, and that this was recognized and ratified by the parties in the alleged settlement.    As to this suggestion the plaintiffs make three contentions:

(1) That the pleadings do not justify such proof.
(2) That it is a defense inconsistent with that made on the first trial and therefore defendant is estopped to make it.
(3) That it was not proved.

It is evident that Frank Ross is the only person to whom a right of action could have accrued against the defendant for unlawfully cutting timber on these lands, because they were his lands under the will.    It is undis-

puted that on June 3, 1905, he executed to plaintiffs an assignment of whatever rights he had, and it is obvious that if he never had such a right, or, having such, had previously thereto settled and given up such right for a valid consideration, nothing passed by such assignment, and the same is equally true of any conveyance or assignment made in the name or on behalf of Frank Ross after such settlement.

We will not discuss the first question at length. The record shows plainly enough that the court considered this a proper defense, that he was disposed to allow such an amendment to the notice accompanying the plea as to cover it, and that all knew that the defendant supposed that it was sufficiently covered in the notice as amended. Moreover, the plaintiffs were not deceived or misled regarding it, and the point is technical. We will not interfere with the discretionary action of the trial judge in allowing the amendment, and we find no error to defendant's prejudice in relation to the subject.

The second ground of plaintiffs' objection calls for but little more consideration than the first. Upon the assumption that the defendant relied only upon the settlement, when the case was first tried, it does not follow that such reliance is necessarily inconsistent with the claim that Frank Ross had then no just claim, though the fact that it was not claimed before, if such were the fact, was one to be considered in determining the truthfulness of the claims of waiver and extension now set up. The question of estoppel arising out of election of defenses (if the rule applies to defenses) depends upon there being a necessary inconsistency between the two claims, and a duty to choose between them. There was no obligation to forego either of these claims, and no necessary antagonism between them. If it is true that there was a valid waiver of forfeiture or extension of the period of the right to cut, and still the matter was in dispute, no legal inconsistency arises from an adjustment of the claim, thereby ending the dispute.

The third contention requires us to determine whether
there was a question of fact for the trial judge to decide
as to the alleged waiver or extension; and this will re-
quire a reference to the testimony.    It is undisputed that
the time limit of the two contracts was September 9, 1899.
The provision for forfeiture of the right to cut timber has
been quoted.    It provides for a clear forfeiture of a right
to cut timber purchased and paid for.    *Williams* v.
*Flood*, 63 Mich. 493.    That the right to claim and en-
force such a forfeiture may be waived by parol is settled
in the recent case of *Wallace* v. *Kelly*, 148 Mich. 336.
It follows that, if there was any proof tending to show
such waiver, the question was for the trial court, and not
for us, but we must determine whether there was any
such evidence.    Connolly was shown to have been the
general land agent for Michigan of all the Ross heirs, in-
cluding Frank Ross, the devisee.    He had powers of at-
torney from all of them.    The following excerpt from the
instrument executed by Frank Ross in his own right, and
as attorney for the other heirs, indicates the power con-
ferred on Connolly:

"Do hereby substitute, make, constitute, and appoint
James Connolly, of the city of Marquette, in the State of
Michigan, to be the true and lawful attorney of said
Frank Ross and John Theodore Ross, acting as aforesaid,
to whom they give full power and absolute authority
for and in the name, and on the behalf of the said Frank
Ross and John Theodore Ross, acting as aforesaid, for
themselves and for the other heirs of the said late James
Gibb Ross, to ask, demand, receive, and recover of and
from all and every person and persons to whom it doth,
shall or may concern, all and every the sums of money,
both principal and interest, costs and charges, goods,
wares, merchandise, effects, and things whatsoever that
now is, or are, or hereafter shall be due, owing, payable,
or belonging to the said Ross & Co., or of the estate of
the late James Gibb Ross, or to the heirs of the late
James Gibb Ross, in the State of Michigan, and in the
state of Wisconsin; also for them, the said Frank Ross
and John Theodore Ross, acting as aforesaid, and for the
said heirs, to examine, settle, adjust and balance all ac-

counts with any person or persons, and all judgments, and rights of action, and to compromise, arbitrate and conclude the same, and what shall be agreed on to receive, and to give good and valid receipts and discharges therefor; and for and in the name and on behalf of the said Frank Ross and John Theodore Ross, acting as aforesaid, or in any legal manner, to sue, commence and prosecute any action or actions, suit or suits, at law or in equity, and to appear in any court or courts, there to answer, defend and reply to all matters touching or concerning the premises, and to do, pursue, sequester, implead, seize, arrest and attach persons and effects in the interest of the said estate, and generally in the premises to manage, negotiate, transact and conduct, liquidate, adjust and settle, as fully and amply as they, the said constituents, in their capacity and as such attorneys of the other heirs of the said decedent might or could do, if personally present.

" Also to sell and dispose of the real estate belonging to the estate of the said James Gibb Ross, deceased, or which may now belong to the heirs of the said deceased, in the State of Michigan, and in the State of Wisconsin, with full power to make, execute, and deliver land contracts, deeds, and other conveyances of said real estate, hereby ratifying and confirming all that our said attorney, James Connolly, shall lawfully do or cause to be done by virtue of these presents."

There was testimony that Connolly was also administrator of the James Gibb Ross estate, that he was in control and management of such estate, and that he made defendant's contracts, the validity of which has not been questioned. In 1898 the defendant applied to him for further time, which it claimed was necessary for the cutting of the timber which it had purchased. The negotiations were partly in writing, and some are said to have been oral. They related to an extension of time for the removal of the timber beyond September 9, 1899. Several letters passed, in which Connolly finally consented and Connolly executed and sent to defendant a quitclaim of the pine upon the descriptions on which extensions were asked. The evidence of Connolly indicates that his consent to the extensions was with the approval of, and authorized by, Frank

Ross. Relying on the waiver, the defendant continued to cut timber on such lands, some of it on section 24, after the settlement of the Sullivan suit, and it paid the taxes up to the time it finished cutting as it had agreed in the contracts to do. If such a waiver and extension were made, they protected the defendant against any charge of trespass growing out of cutting timber under the contracts upon the lands covered by such waiver.

It is claimed by plaintiffs that, if defendant had an extension, it terminated at the end of two years according to its terms, and, if not, it was revoked by Connolly's deed and the deeds from Ross to plaintiffs in the spring of 1904, after which time some of the timber on section 24 was cut. It must be remembered that the two deeds mentioned were quitclaim deeds, and therefore they conveyed, at most, only the remaining interest in this land. Previous to that time, defendant had purchased all of the timber on the land, and it had been conveyed to it by a proper instrument. It is true that it was subject to a forfeiture, but there is evidence in the case upon which the learned circuit judge found that the right to forfeit had been lawfully waived, not for two years merely, but absolutely. If that is true, the unqualified title to the timber was then in the defendant, and it did not pass by those quitclaim deeds to the plaintiffs. Defendant had a license coupled with an interest, and, if the right to forfeit was waived, it was not revocable during the continuance of the interest. *Powers* v. *Harlow*, 53 Mich. 507, and cases there cited; *Williams* v. *Flood*, 63 Mich. 490; *Wait* v. *Baldwin*, 60 Mich. 623, 626. We cannot say that there was no evidence supporting the finding. This disposes of plaintiffs' contention that a verdict should have been directed in their favor so far as the timber cut from section 24 after the alleged settlement is concerned.

The finding does not show that the waiver extended to any other lands. As to those, the record shows that on each trial the court found that all claims for cutting timber after September 9, 1899, were settled at the time of

the settlement of the Sullivan suit. This alleged settlement has been alluded to, though the facts have not been fully stated. Sullivan had a protracted litigation with Ross and his representative which resulted in a large judgment in his favor. Subsequently he filed the bill hereinbefore mentioned, to which defendant was made a party, with a view to reaching the purchase price or value of the timber cut by it. This led to complications in relation to the contracts between defendant and the Ross heirs, and some indemnity bonds were given to the defendant by the Rosses. Frank Ross, who was the devisee under the will, made an arrangement with Sullivan by which he agreed to, and subsequently did, pay his claim, taking an assignment of his judgment. By the terms of the arrangement, the chancery suit was to be settled before decree, and to this suit the defendant was a party, and it is its claim that its consent to this disposition of the chancery case was obtained by an arrangement with Frank Ross, in which it was agreed that it should give up its indemnity bonds, and that all claims for trespass growing out of the timber contracts should be relinquished by Ross. We see no legal impediment to the validity of such an agreement. There was testimony tending to establish it, and the judge appears to have believed that such a settlement was made, for he has so found. The finding states that all timber sued for in this cause, except that on section 24, was cut before the settlement, and was covered by it, and that there could be no recovery for the cutting of such timber. It also states that the authorized agents of Frank Ross waived the forfeiture provided for in the contracts, as to section 24.

It is contended that there is no testimony tending to show that Connolly had authority to do this, and that there was no evidence of any valid ratification by Geggie or Brown, or authority on their part to ratify it. We think there is such evidence of both. There are some assignments of error that we do not specifically mention. Some of them relate to rulings upon the introduction of

testimony, others that specific findings were not supported by any evidence. We omit further allusion, because they cannot affect the result. Some of them related to unessential matter; others we find to have an unsubstantial foundation, because there was evidence tending to support the findings.

The judgment is affirmed.

GRANT, C. J., and BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.