BERNARD HENSLEY, Appellee, v. INCORPORATED TOWN OF GOWRIE, Appellant.

MUNICIPAL CORPORATIONS: Torts—Governmental Powers and
1 Functions—Non-liability for Negligence. The maintenance by a
municipality in its city park of a fountain constitutes the exercise of
a governmental function, with consequent non-liability of the munici-
pality for injuries connected with such maintenance. (See Book of
Anno., Vol. 1, Sec. 5738, Anno. 11 *et seq.*)

MUNICIPAL CORPORATIONS: Use and Regulation of Public Places
2 —Nuisance—Essential Elements. In order that a construction or
erection may properly be classified as a nuisance, there must be some-
thing in its nature and in its relation to its surroundings and to the
use of such surroundings which foreshadows dangerous possibilities.
So held as to a fountain in a public park.

Headnote 1: 28 Cyc. p. 1311. Headnote 2: 28 Cyc. pp. 1293, 1311.

Headnote 1: 29 A. L. R. 860; 19 R. C. L. 1129. Headnote 2: 19 R.
C. L. 817.

*Appeal from Webster District Court.*—SHERWOOD A. CLOCK, Judge.

MARCH 15, 1927.

Action for damages for personal injuries sustained by plain-
tiff, a minor child, while playing in the public park of the town
of Gowrie. At the close of the evidence, the defendant moved
for a directed verdict, one ground of such motion being that the
city was not liable for the alleged negligence in the maintenance
of a public park. This motion was overruled. The case was sub-
mitted to the jury, and a verdict rendered against the defendant.
Judgment being rendered on the verdict, the defendant has ap-
pealed.—*Reversed.*

*Mitchell, Files & Mulholland,* for appellant.

*Price & Burnquist,* for appellee.

EVANS, C. J.—This case was tried in the district court be-
fore our pronouncement in *Norman v. City of Chariton,* 201

Iowa 279. The question now presented to us is whether our hold-

ing in the *Norman* case is decisive of this appeal.

1. MUNICIPAL
CORPORATIONS:
torts: govern-
mental powers
and functions:
non-liability for
negligence.
The facts of this case, briefly stated, are: The ac-
cident in question occurred on July 4, 1924. The
plaintiff was a boy 9 years of age; weighing about
65 pounds. The defendant city had for many

years maintained a public park. In 1905, a fountain was erected
therein, and this had been in use up to the time of the accident.
This fountain comprised a ground bowl, circular in form, and
10 feet in diameter. Its circular wall was 11 inches thick and
16 inches high. In the center of this ground bowl was con-
structed a cement base, up to a level with the outer wall, and
having a diameter of 19 inches. On this center base an iron
fountain was set. This was 12 inches wide at the base and
56 inches in height. From underground up through the
cement base and through the iron fountain extended a one-
inch galvanized water pipe. This was fastened with a burr
at the top, and served to hold the fountain in place. At
the top of this iron fountain was an iron bowl 12 inches in
diameter; and beneath that another iron bowl 25 inches in
diameter. The water was discharged from the pipe into the
upper bowl; the second bowl and the ground bowl were filled by
overflow from above. On the date in question, the plaintiff and
a companion, Cecil Bowers, were playing about the fountain.
The two boys were engaged in a chase on the outer wall of the
ground bowl. The plaintiff jumped across from the outside wall
to the center base, upon which the fountain rested. In his jump
he grabbed the fountain, subjecting it to his momentum. The
water pipe broke, and the fountain fell. As a result of the fall,
plaintiff was severely injured. The plaintiff described the meth-
od of the accident as follows:

"We were playing tag, and I ran around there, and I
jumped on that.thing, and it did not go over, and then I jumped
on it again, and it did go over. I was running around, and Cecil
was chasing me, and I grabbed hold of the bowl and swung my
feet clear from the cement. When I swung my feet clear from
the outside cement, I put my feet down at the bottom there,—
the base,—that the fountain rests on, then I jumped over back
to the cement again."

Cecil Bowers testified as follows:

"When we got to the fountain, we got up on the round bowl, —that flat piece,—and I tried to catch Bernard. We were playing there about 15 minutes before Bernard got hurt.   *   *   *   Bernard and I were playing tag. We were running around up on that flat piece on the bowl, and he jumped across; and the first time he jumped, the tower went that way,—that middle part went over just a little ways; and the second time he jumped, it went over with him, and he came right down on the edge of the bowl. He started running around the outside of the bowl ahead of me. When I caught up, he jumped over onto the middle piece. The first time, he caught the middle piece about the middle; then he jumped back on the outside again, and then he started running around, and I chased him. He jumped too quick for me to catch him, and the second time he jumped over onto the middle, the bowl came over on him."

The park was used as a place of general recreation by the general public, including children, and contained conveniences for the play of children, such as teeter boards, swings, etc. The fountain was first erected in 1905. In 1922 it was reconstructed, at which time the old pipe was replaced with a new one. The plaintiff introduced evidence that the usual and ordinary construction of such a fountain included a firmer fastening of the fountain to its base than the water pipe afforded. The witness Pray, by whom such fact was proven, testified also as follows:

"It would be almost impossible to break the pipe, pulling one foot from the junction; and two feet, you could break it off if *you pulled awful hard. It is a fact that, unless some heavy outside pressure is applied near the top of the fountain, with a fountain such as this at Gowrie, it would stand there until the base decayed away.*"

It is not claimed that there ever had been any breakage of the pipe before, or that the fountain was dangerous in any other sense than the insufficient strength of the pipe. In the *Norman* case we held that the maintenance of a public park by the city is the exercise of a governmental function, and that the city is not liable in damages for the negligence of its officers or employees engaged in such maintenance. This holding was reaffirmed in principle in *Harris v. City of Des Moines*, 202 Iowa 53. It would serve no useful purpose to repeat the discussion contained in the cited cases. Sufficient to say that, in our judg-

ment, the *Norman* case has the support of the great and increasing weight of authority. For very recent discussions of the question involved, see *Scibilia v. Philadelphia*, 279 Pa. St. 549 (32 A. L. R. 981); *Gensch v. City of Milwaukee*, 179 Wis. 95 (190 N. W. 843) *Heino v. City of Grand Rapids*, 202 Mich. 363 (168 N. W. 512).

It is urged by the appellee that our holding in the *Norman* case, if held applicable to the instant case, would run counter to our holding in *Woodard v. City of Des Moines*, 182 Iowa 1102. But it must be noted. that in the *Woodard* case the question of governmental function was not raised at all, and that the discussion of the opinion was not directed thereto. In that case the city had maintained a traveled way for many years, extending from Ninth Street to a railway station, and it had constructed and was maintaining steps for the use of pedestrians upon such traveled way. What was held was that the duty of the city with reference to such traveled way maintained by it was of the same character as was imposed upon it in relation to its streets and alleys. It is to be conceded that there is language contained in the discussion which wholly ignores the distinction between the governmental and the ministerial functions of the city, and in that sense it might be deemed inconsistent with our holding in the *Norman* case.

Appellee relies also upon certain language contained in the opinion in *Wheeler v. City of Fort Dodge*, 131 Iowa 566. Here again the question of governmental function was neither raised nor considered. The facts presented involved the creation of a very dangerous nuisance above the street. This was the "slide-for-life" case, wherein a wire had been extended across the street for the purpose of an acrobatic performance above the street. The acrobat fell, and seriously injured a pedestrian, who was lawfully upon the street. We held the city liable for the acts of its officials in permitting and even creating a manifest nuisance upon its public street. The language used in the discussion of such question is to be regarded as in the nature of dictum, when it is sought to apply it to questions which were not under consideration in the case wherein the language was used.

It is also urged by appellee that the question of liability is governed by Section 753 of the Code of 1897. This section provides as follows:

"They shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares and commons within the city, and shall cause the same to be kept open and in repair and *free from nuisances.*"

The argument is that the fountain involved in the instant case was a nuisance, and was therefore maintained in violation of Section 753. If we assume, without so holding, that this section is inclusive of parks, yet it must be said that the fountain in question was not a nuisance, in any legal sense. The only reason presented by this record for saying that this fountain had any of the qualities of a dangerous instrumentality was the fact that this accident happened. It was not erected for the purpose to which it was subjected by the lad. In its construction it was isolated from just such contact. It was surrounded by moat and trench and water. It had no drawbridge. As constructed, it was adapted to all the functions for which it was erected. For twenty years it had performed such function without menace to anyone. It was no more dangerous than a tree would be, from the breaking limb of which some daring boy might fall. Any material object, however harmless or inert, *can* become a circumstance in an accident. This fact alone is insufficient to classify it as a dangerous instrumentality. To be such, there must be something in its nature and in its relation to its surroundings and to the use of such surroundings which foreshadows dangerous possibilities. Some objects are inherently dangerous, such as moving machinery or a charged wire. Mere accessibility to such is suggestive of danger, and calls for guard. Surely, a fountain in a public park suggests no inherent danger, nor was there anything about this fountain which rendered it inherently dangerous, nor anything in its relation to its surroundings or to the use of its surroundings which would suggest to the ordinary mind any dangerous possibilities. The circumstances of the accident were so unique and so foreign to the ordinary use and purpose of the fountain and so unprecedented that it should not be deemed to transform into an existing nuisance an instrumentality previously harmless. Sufficient, however, to say that, in our judgment, the *Norman* case above cited is controlling of the decision herein.

2. MUNICIPAL CORPORATIONS: use and regulation of public places: nuisance: essential elements.

The judgment below is, accordingly, reversed.—*Reversed*.

DE GRAFF, ALBERT, and MORLING, JJ., concur.