MELTON v THE URBAN AMERICAN LAND DEVELOPMENT
COMPANY

1. NEGLIGENCE—ARTIFICIAL CONDITION—CHILD TRESPASSER.

A possessor of land is subject to liability for bodily harm to young
children trespassing on it caused by a structure or artificial
condition which he maintains upon the land if the place is one
upon which the possessor knows or should know that children
are likely to trespass, the condition is one which he knows or
should know involves an unreasonable risk of death or serious
bodily harm to such children, the children because of their
youth do not discover the condition or realize the risk involved
in intermeddling in it or in coming within the area made
dangerous by it, and the utility to the possessor of maintaining
the condition is slight as compared to the risk to young chil-
dren involved.

2. TRIAL—OPENING STATEMENT—CAUSE OF ACTION.

An attorney's opening statement should describe, for the jury's
benefit primarily, the very general nature of his client's case; it
must be done in simple language a jury likely will understand
which is not the language appropriate for use when the techni-
cal requirements of stating a cause of action must be met.

3. NEGLIGENCE—ARTIFICIAL CONDITION—CHILD TRESPASSER—QUESTION
FOR JURY—OPENING STATEMENT.

It was a question for the jury to determine whether plaintiffs'
proofs entitled them to recover damages from defendant be-
cause plaintiff four year old was injured in defendant's par-
tially constructed dwelling where the complaint stated that the
housing unit in which plaintiff was injured was in a state of
hazardous disrepair, having many dangerous risks threatening
to those who entered the premises, that defendant knew or
should have known that children, including plaintiff, would be
likely to enter the premises, that defendant failed to take

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 57 Am Jur 2d, Negligence §§ 88, 89.
    63 Am Jur 2d, Premises Liability §§ 87, 88, 92, 136, 155.
[2, 3] 53 Am Jur, Trial §§ 69, 452, 454, 455.

affirmative action to prevent a situation which would pose an unreasonable risk of harm to the children, that children played in or around the construction site and that this was known or should have been known by defendant, and that as a direct and proximate result of defendant's negligence, plaintiff suffered injuries and where plaintiffs' opening statement encompassed all of the ultimate facts to be proven and essential to plaintiffs' cause of action, the complaint and opening statement were adequate and the trial judge therefore erred in granting defendant a directed verdict of no cause of action.

Appeal from Ingham, Ray C. Hotchkiss, J. Submitted Division 2 May 14, 1973, at Lansing. (Docket No. 14885.) Decided June 28, 1973.

Complaint by Jean Melton for herself and as next friend of Glen Melton against The Urban American Land Development Company for damages for negligence. Directed verdict for defendant. Plaintiffs appeal. Reversed and remanded for a new trial.

*Greater Lansing Legal Aid Bureau* (by *Carl H. Kaplan* and *Mark T. Light*), for plaintiffs.

*Burwell & Shrank,* for defendant.

Before: FITZGERALD, P. J., and T. M. BURNS and ADAMS,* JJ.

PER CURIAM. This is an action for damages resulting from injuries sustained on November 30, 1968, by plaintiff Glen Melton, then four years old. On August 18, 1971, plaintiffs filed a complaint alleging that Glen Melton, while playing in a partially constructed dwelling owned by defendant, fell into the basement through an open stairwell. Following plaintiffs' opening statement to the jury,

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

defense counsel moved for a directed verdict of no cause of action.[1] The trial judge listened to argument on this motion and then ruled as follows:

"The *Swanson* case *[Swanson v City of Marquette,* 357 Mich 424; 98 NW2d 574 (1959)]* in no way reverses the line of cases that commences with *Hargreaves [Hargreaves v Deacon,* 25 Mich 1 (1872)]* and proceeds down through *Morris* and *Lewis Lumber Company [Morris v Lewis Mfg Co,* 331 Mich 252; 49 NW2d 164 (1951)].* The *Swanson* case merely says that the prior rule was modified by the *Lyshak* case *[Lyshak v Detroit,* 351 Mich 230; 88 NW2d 596 (1958)]* and in those areas where there was a known trespasser or evidence he had been involved with this inherent dangerous instrumentality, namely this electric power station, then a child's life is obviously worth more than public consideration is.

"And I suppose counsel can clearly, in reading these cases, take the position that the trend is to become more liberal in relation to child injuries upon vacant property, but I think that until such time as the Supreme Court clearly enunciates that it's reversing the doctrine of *Hargreaves* through the line of cases to *Morris-Lewis Lumber Company,* this case, the court is bound to rule in relation to those matters which really —which clearly come within that rule and are not within the modifying view of *Lyshak* and *Swanson.*

"If the Supreme Court now feels that it is ready to sweep aside all of the ramifications of a child trespasser, as Justice EDWARDS would indicate he wanted to do back in 1958 in the *Lyshak* case, then they should so enunciate. But until that is the law of the State of Michigan, I feel bound to follow what I consider to be the law. Until such time as the court finds a case where they desire to adopt that consideration, I feel bound to adopt what is the law of Michigan and therefore I will grant the motion for directed verdict.

"*Mr. Oade:* May it please the court, your Honor, is it my understanding that the court's opinion is saying

[1] *See* GCR 1963, 515; 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 526.

that on the basis of my opening statement that the defendant's house was not an inherently dangerous instrument?

"*The Court:* I don't know that that has any bearing on my decision.

"*Mr. Oade:* I thought you mentioned your interpretation of *Lyshak* and *Swanson* was—mostly *Lyshak,* was that there was a seen trespasser and *Swanson* was on the ground that there was an inherently dangerous instrument which was maintained. I have alleged in my opening statement that there was an inherently dangerous situation too that was maintained. Doors opened, piles of dirt, broken windows, situation where the defendants thereto knew there were trespassers. I was wondering if the court feels that as a matter of law, I failed to state this as an inherently dangerous active *[sic]* or as a matter of law it can't be an inherently dangerous situation at all.

"*The Court:* I don't think that is the situation at all. I will be happy to file a written opinion if you want to make such a request.

"*Mr. Oade:* I do, your Honor.

"*The Court:* All right.

"*Mr. Oade:* Thank you."

The trial judge never filed the promised written opinion.

In *Swanson v City of Marquette,* 357 Mich 424, 427–429; 98 NW2d 574, 576–577 (1959), the majority opinion states:

"[The trial court's] opinion in these matters is dated November 23, 1957. On March 4, 1958, this Court decided *Lyshak v City of Detroit,* 351 Mich 230 [88 NW2d 596 (1958)], the effect of which was to modify prior Michigan cases which held, or implied, that infant trespass automatically barred all rights of recovery against a landowner whose premises contained a hazardous condition of which he had actual or constructive knowledge. [Citations omitted.]

"In the instant cases we have the allegation of an electrical substation containing high-voltage wires con-

stituting a dangerous instrumentality. [Citations omitted.] We have the allegation that defendant had knowledge, or in the course of ordinary care should have had knowledge, of holes in the fences or walls surrounding the substation, making same dangerous to children in the vicinity. [Citations omitted.] We have the allegation that children played in the vicinity of the substation and that defendant either knew, or in the exercise of ordinary care should have known, that fact. [Citations omitted.] And finally, we have the allegation that defendant's negligence as recited was the proximate cause of the injuries complained of.

"In 2 Restatement, Torts, § 339 [footnote omitted], our instant problem is dealt with as follows:

" 'A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

" '(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

" '(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

" '(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

" '(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.'

"We believe the declarations stated a cause of action and should not have been dismissed on defendant-appellee's motions."

The complaint in the instant case states that the housing unit in which Glen Melton was injured was in a state of hazardous disrepair, having many dangerous risks threatening those who entered the premises; that defendant knew or should have

known that children, including Glen Melton, would be likely to enter the premises and that defendant failed to take affirmative action to prevent a situation which would pose an unreasonable risk of harm to the children; that children of the neighborhood played in and around the construction site, and that this was known or should have been known by defendant; and that as a direct and proximate result of defendant's negligence, Glen Melton suffered injuries.

In examining plaintiffs' opening statement, it is necessary to recall that "an attorney's opening statement should describe, for the jury's benefit primarily, the very general nature of his client's case. To be accomplished effectively before a jury, it must be done in simple language a jury likely will understand, and that is not the language appropriate for use when the technical requirements of stating a cause of action must be met." *Ambrose v Detroit Edison Co,* 380 Mich 445, 454–455; 157 NW2d 232, 235–236 (1968).

In the present case, plaintiffs' opening statement clearly painted "with a broad brush and with quick, simple strokes a word outline of his case". *Ambrose, supra,* 380 Mich at 454; 157 NW2d at 235. The statement encompassed all of the ultimate facts proposed to be proven and essential to plaintiffs' cause of action. Since plaintiffs' complaint and opening statement were adequate, the trial court's action in the case at bar is properly subject to Justice BLACK's criticism of "this business of hurried justice for common-law damage actions which depend exclusively upon the sufficiency of proof (not yet adduced) and upon the uncertainties of human memory and the communication thereof from the witness stand". *Ambrose, supra,* 380 Mich at 459; 157 NW2d at 238.

In *Swanson, supra,* plaintiff was injured by high voltage wires, *i.e.,* by what might be described as a static condition, artificially created. *Swanson* did not involve so-called "active negligence". The Court there held that plaintiff's complaint was sufficient in alleging actual or constructive knowledge by defendant regarding defects on the premises and the presence of children in the vicinity. *Swanson* adopted 2 Restatement Torts, § 339[2] as applicable when child trespassers are injured by an artificial condition on land. Similarly, in the present case it was for the jury to determine whether plaintiffs' proofs entitled them to recover damages from defendant.

Reversed and remanded for a new trial. Costs to plaintiffs.

---

[2] Currently 2 Restatement Torts, 2d, § 339.