A. BRUCE GILBERT v SABIN

KAREN GILBERT v SABIN

1. NEGLIGENCE—LANDOWNERS—ATTRACTIVE NUISANCE—TRESPASS—
    CHILDREN.

    A possessor of land is subject to liability for physical harm to
    children trespassing thereon caused by an artificial condition
    upon the land if (1) the place where the condition exists is one
    upon which the possessor knows or has reason to know that
    children are likely to trespass, and (2) the condition is one of
    which the possessor knows or has reason to know and which he
    realizes or should realize will involve an unreasonable risk of
    death or serious bodily harm to such children, and (3) the
    children because of their youth do not discover the condition or
    realize the risk involved in intermeddling with it or in coming
    within the area made dangerous by it, and (4) the utility to the
    possessor of maintaining the condition and the burden of
    eliminating the danger are slight as compared with the risk to
    children involved, and (5) the possessor fails to exercise reason-
    able care to eliminate the danger or otherwise to protect the
    children.

2. NEGLIGENCE—ATTRACTIVE NUISANCE—CHILDREN—LICENSEE—INVI-
    TEE—TRESPASSER.

    In any case where a possessor of land would be subject to liability
    to a child for physical harm caused by a condition on the land
    if the child were a trespasser, the possessor is subject to
    liability if the child is a licensee or an invitee.

3. NEGLIGENCE—BUSINESS VISITORS—CHILDREN—INVITEE—LICENSEE—
    TRESPASSER.

    A child accompanying a business visitor on premises where

REFERENCES FOR POINTS IN HEADNOTES
[1, 5] 62 Am Jur 2d, Premises Liability §§ 155–160.
    Age and mentality of child as affecting application of attractive
    nuisance doctrine. 16 ALR3d 25.
[2, 3, 6] 62 Am Jur 2d, Premises Liability § 145.
    Liability for injury or death of child social guest. 20 ALR3d 1127.
[4] 62 Am Jur 2d, Premises Liability § 148.

business is conducted shares the business visitor's status as an invitee, and when the child strays from that portion of the business premises to which he is impliedly invited he becomes a licensee rather than a trespasser.

4. NEGLIGENCE—LANDOWNERS—CHILDREN—TRESPASS—KNOWLEDGE OF TRESPASS.

Courts have denied recovery to infant trespassers who were injured by an artificial condition upon land where their presence on the land was not actually known to the defendant and where there was no showing that defendant knew or had reason to know that children had trespassed previously.

5. NEGLIGENCE—LANDOWNERS—DANGEROUS CONDITIONS—CHILDREN.

A landowner is under no duty to render his premises child proof by eliminating dangerous conditions, absent some reason to anticipate the presence of children.

6. NEGLIGENCE—LANDOWNERS—CHILDREN—LICENSEE—INVITEE—REASONABLE FORESEEABILITY—HARM.

A landowner is liable to a child who is injured upon his land where the child is upon the land as a licensee or invitee and the owner could reasonably foresee that the child would be exposed to an unreasonable risk of harm.

Appeal from Gratiot, Leo W. Corkin, J. Submitted January 4, 1977, at Lansing. (Docket No. 27940, 27941.) Decided June 7, 1977.

Complaints by A. Bruce Gilbert and Karen Gilbert, as next friend of Darwin Gilbert, against Nelson and Hildred Sabin for damages for injuries sustained by Darwin Gilbert from a gunshot wound. Judgment for plaintiffs. Defendants appeal. Remanded.

*Tucker & Kubin,* for plaintiff.

*Fortino, Plaxton & Moskal,* for defendant.

Before: DANHOF, C. J., and BASHARA and R. M. MAHER, JJ.

DANHOF, C. J. Plaintiff A. Bruce Gilbert brought suit to recover for medical expenses he incurred for the treatment of injuries sustained by his son Darwin Gilbert in a shooting incident. Plaintiff Karen Gilbert, as next friend of her son Darwin Gilbert, brought an action to recover damages for the same injuries. The two actions were heard together in a bench trial, and the trial judge found for plaintiffs, awarding $7,334.65 for medical expenses incurred and $120,000 in damages. Defendants appeal by right.

The shooting occurred on July 16, 1971. About two weeks previously a friend left a .22-caliber automatic rifle for Mr. Sabin to use while his own rifle was being adjusted. Mr. Sabin removed the clip and stored the rifle against the wall in his garage behind a number of barrels. Mr. Sabin did not engage the safety or check to see whether there was a round in the chamber. The rifle was visible only to a person standing at a point several feet inside the garage.

On the day of the shooting Mrs. Gilbert, and her three children, Rodney, Darwin, and Linda, ages 4, 2, and 12, respectively, arrived to collect some raspberries which Mrs. Gilbert had ordered. Both Mrs. Sabin and Mrs. Gilbert testified that the Gilbert children had accompanied Mrs. Gilbert to the Sabin home on previous occasions. It was undisputed that customers did not normally enter the garage when purchasing raspberries. Instead, Mr. Sabin would place the berries on a table in the yard, as he had done on the day of the shooting before leaving home to run some errands.

Mrs. Gilbert and her children went into the Sabin home, where Mrs. Gilbert, Mrs. Sabin, and a Mrs. White engaged in social conversation. While the women were conversing, Rodney volunteered

to take Darwin's empty baby bottle to the car. Accompanied by Darwin, Rodney left the house to do so. Within a short time, the women heard a "popping" noise and Linda Gilbert went out to check on the boys. Mrs. Gilbert testified that Mrs. Sabin called after Linda not to let the boys go into the garage, but Mrs. Sabin denied this. Mrs. Sabin testified that a few moments later she realized that the noise had been the sound of a gun discharging, and the women followed Linda outside, where they found Darwin, unconscious in Linda's arms, just outside the door to the garage that was roughly opposite the back door to the Sabin home. Linda had discovered Darwin on the floor inside the garage and carried him outside when the women emerged from the house. Later, at the hospital, it was determined that Rodney had shot Darwin with the rifle, apparently while playing with it. Darwin was permanently paralyzed from the waist down when the bullet severed or damaged his spinal cord.

In finding for plaintiffs the trial judge relied upon *LeDuc v Detroit Edison Co,* 254 Mich 86; 235 NW 832 (1931), *Butrick v Snyder,* 236 Mich 300; 210 NW 311 (1926), *Anderson v Newport Mining Co,* 202 Mich 204; 168 NW 523 (1918), and the leading case of *Powers v Harlow,* 53 Mich 507; 19 NW 257 (1884). The trial judge recognized that "a conservative view has prevailed as to the status of trespassers and the duty a landowner owes them", citing *Petrak v Cooke Contracting Co,* 329 Mich 564; 46 NW2d 574 (1951), but thought that "when children of tender years are injured by reason of an inherently dangerous instrumentality the court does not adopt the conservative approach to an owner's duty to trespassers". The trial judge thought that, "at worst" the boys "would be considered as technical trespassers" when they wan-

dered into the Sabins' detached garage, but his opinion is ambiguous as to the boys' status.

It is apparent from an examination of the cases on which he relied that the trial judge premised liability upon application of the high duty of care owed to children by possessors of land under the doctrine of attractive nuisance, so-called, which was first recognized in this state in *Powers v Harlow, supra.* In finding for plaintiffs, the trial judge said:

> "It would appear to this Court that the garage in this case, like the shed in *Powers,* was a place where a young child would naturally enter out of curiosity and a firearm, within sight and reach would be an object to which the child would be attracted. There can be no question but what a loaded firearm is an inherently dangerous instrumentality."

On appeal, defendants contend that the trial judge erred as a matter of law in applying the doctrine of attractive nuisance to the facts of the instant case because there was no evidence that defendants knew, from prior trespasses, that children were likely to trespass in the garage, and because there was nothing about the garage itself that rendered it any more inviting to children than any other garage.

The Restatement of Torts (2d) provides the classic statement of the doctrine of attractive nuisance:

> "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
>
> "(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." 2 Restatement Torts, 2d, § 339, p 197.[1]

Defendants appear to concede that all elements of the rule are satisfied in this case except subsection (a), which requires that "the place where the condition exists is one upon which the possessor *knows or has reason to know* that children are likely to trespass". (Emphasis added.)

Before proceeding to consider this contention, we must first examine two initial considerations not raised by either party in the briefs. First, in *Williams v Primary School District #3,* 3 Mich App 468, 474; 142 NW2d 894 (1966), this Court stated:

"Plaintiffs' claim based on attractive nuisance is inapplicable to the facts of this case because trespass is the basic requirement of an attractive nuisance, and it is absent here, *Royston v. City of Charlotte* (1936), 278 Mich 255."

[1] Although the drafters of the Second Restatement have made some slight changes not here material, Michigan courts have approved this formulation of the rule. *See Chadwick v Detroit & T S L R Co,* 364 Mich 545; 111 NW2d 877 (1961), *Swanson v Marquette,* 357 Mich 424; 98 NW2d 574 (1959), *Lyshak v Detroit,* 351 Mich 230; 88 NW2d 596 (1958), *Melton v The Urban American Land Development Co,* 48 Mich App 272; 210 NW2d 262 (1973).

This brief statement is only dictum, since the Court expressly stated that it was "not necessary to decision here". *Williams,* at 473. Similar dictum, unsupported by any authority, appears in *Pichette v Manistique Public Schools,* 50 Mich App 770, 773; 213 NW2d 784 (1973), a case involving the doctrine of governmental immunity. Thus the only authority supporting the rule that trespass is a basic requirement of an attractive nuisance is *Royston v City of Charlotte,* 278 Mich 255; 270 NW 288 (1936), decided during an era when the Michigan Supreme Court hewed to a decidedly conservative approach to claims founded on attractive nuisance. The Court in *Royston* did not hold that trespass was a basic requirement of an attractive nuisance, however; it merely held that no matter on what theory plaintiff's claim was grounded, it was barred by the doctrine of governmental immunity.[2] Thus *Williams'* repetition of that dictum hardly constitutes binding precedent, and we decline to follow it, particularly since the great weight of authority is to the contrary.[3] We hold that if a child trespasser is within the protec-

---

[2] The statement in *Royston* relied upon by the Court in *Williams, supra,* is contained in a quotation from *Smith v Iowa City,* 213 Iowa 391; 239 NW 29 (1931). We note that both *Smith* and the authority relied upon in *Hensley v Town of Gowrie,* 203 Iowa 388; 212 NW 714 (1927), were expressly overruled in *Hall v Town of Keota,* 248 Iowa 131; 79 NW2d 784, 789 (1956). In so overruling those cases, the Iowa Court said that "the real basis for the holding in each * * * was that a governmental function was involved". *Hall v Town of Keota,* at 140; 79 NW2d at 789. Thus the only authority in Michigan for the proposition that a trespass is a basic requirement of an attractive nuisance is the discredited dictum from *Smith v Iowa City* quoted in *Royston.*

[3] Dean Prosser has criticized *Williams* as "apparently wrong", Prosser, Torts (4th ed), § 59, p 367, n 51, and all other jurisdictions have followed the rule of 2 Restatement Torts, 2d, § 343 B, p 222: "In any case where a possessor of land would be subject to liability to a child for physical harm caused by a condition on the land if the child were a trespasser, the possessor is subject to liability if the child is a licensee or an invitee." This rule has reference to the doctrine of attractive nuisance, 2 Restatement Torts, 2d, § 343 B, Comment *a,* p

tion of the rule, certainly a child licensee or invitee is similarly protected.

Secondly, we disagree with the trial judge's characterization of Darwin and Rodney's status as technical trespassers. The weight of authority holds that a child accompanying a business visitor on premises where business is conducted shares the business visitor's status as an invitee, and when the child strays from that portion of the business premises to which he is impliedly invited he becomes a mere licensee rather than a trespasser. See Anno: *Child accompanying business visitor to store, shop, or the like as invitee or licensee,* 44 ALR2d 1319, 1329–1336, 1337–1339. Since defendants admitted in their pleadings that the garage door was open,[4] Rodney and Darwin were at least licensees when they strayed into an area not customarily open to business visitors on the Sabin property.

This brings us to the principal questions raised by this appeal. Defendants contend that because there was no proof that children had entered the garage in the past the doctrine of attractive nuisance is inapplicable to this case, because plaintiffs have failed to show that defendants knew or had reason to know from past experience that children

---

223, and is intended to make that doctrine "equally applicable where the child is a licensee or an invitee". *Id,* comment *b.* The cases so hold. *See, e.g., Courtell v McEachen,* 51 Cal 2d 448, 457; 334 P2d 870, 875 (1959), *Kemline v Simonds,* 231 Cal App 2d 165; 41 Cal Rptr 653 (1964), *Gross v Bloom,* 411 SW2d 326, 328 (Ky, 1967), *Peterson v Richfield Plaza, Inc,* 252 Minn 215, 221; 89 NW2d 712, 717 (1958).

[4] As will be seen, this admission is critical to our disposition of this case. Counsel for defendants stated at oral argument that it was undisputed that the door was closed, and offered to provide citations to the transcript to that effect. Inexplicably, plaintiffs' counsel failed to challenge the accuracy of that statement. Our careful examination of the transcript reveals that, although it was undisputed that the automobile doors and another pedestrian door were closed, the testimony was inconclusive as to whether the pedestrian door opposite the back door of the Sabin home was open or closed.

were likely to trespass in the garage. Facially, this claim has some merit. It is true that in many cases involving the doctrine of attractive nuisance the courts have focused on the question of whether the defendant possessor of land had knowledge that children had trespassed previously. In the absence of such a showing, the courts have denied recovery to infant trespassers whose presence on the land was not actually known to the defendant. In *Heider v Michigan Sugar Co,* 375 Mich 490; 134 NW2d 637 (1965), plaintiff's two sons, ages 8 and 12-1/2, were drowned in a pond on defendant's property while trapping muskrat. After review of the cases considering the requisite element of knowledge, Justice KELLY, writing for reversal of a judgment for plaintiffs, said:

" *'Reasonable foreseeability'* as a necessary prerequisite to liability is not established in this record, which is completely devoid of any evidence from which an inference could be drawn that defendant owner knew, or had any reason to know, that infant children would be trapping, playing, or trespassing upon the property." (Emphasis added.) *Heider,* at 504.[5]

Defendants' argument proves too much, however, for an examination of the cases relied upon by them reveals that in each case the plaintiff children were undiscovered trespassers. In such a case, a requirement that the owner of premises

[5] Similar statements with respect to the element of knowledge in attractive nuisance cases are to be found in *LeDuc v Detroit Edison Co,* 254 Mich 86, 92; 235 NW 832 (1931), *Hargis v Dearborn Heights,* 34 Mich App 594, 602; 192 NW2d 44 (1971), and *Browning v Eichelman,* 12 Mich App 408, 410–411; 162 NW2d 898 (1968), where we said that "[l]iability is not imposed in attractive nuisance cases unless there is an awareness that infant trespassers are subjecting themselves to danger, [citation omitted] and where, with this knowledge, no reasonable action is taken to alleviate the danger." *See Graves v Dachille,* 328 Mich 69, 74; 43 NW2d 64 (1950).

have knowledge that children have trespassed in the past merely serves as an appropriate limitation on the landowner's duty of care; a landowner is under no duty to render his premises "child proof" by eliminating dangerous conditions, absent some reason to anticipate the presence of children. *LeDuc, supra,* at 92; see 2 Restatement Torts, 2d, § 339, comment *g,* p 201. When a child is upon the land as a licensee or an invitee, and his presence is known to the owner of the land, however, the question becomes whether the owner could reasonably foresee that the child will there be exposed to an unreasonable risk of harm. See *Heider, supra,* at 504; 2 Restatement Torts, 2d, § 339, comment *b,* p 198, § 344, comment *c,* p 223.[6] It would be nonsensical to permit recovery under an attractive nuisance theory when a trespassing child plaintiff alleges that defendant had reason to know from past experience that plaintiff *might* be on the land where a dangerous condition is present, *Swanson v Marquette,* 357 Mich 424; 98 NW2d 574 (1959), and at the same time deny recovery to a non-

---

[6] In *Lyshak v Detroit,* 351 Mich 230, 246; 88 NW2d 596 (1958), the Court quoted with approval from *Cockerham v R E Vaughan, Inc,* 82 So 2d 890, 891 (Fla, 1955), in which the Florida Supreme Court said, " ' "The test to be applied in a case of this type is *whether a reasonably prudent person should have anticipated the presence of children or other persons* at the place where the appellee created a condition that a jury could find was an 'inherently dangerous condition' or a 'dangerous instrumentality' like unto an explosive substance, an inflammable material, a live wire or a spring gun." ' " (Emphasis added.)

In *Lyshak,* there was testimony that the members of the golfing party, one of whose number drove the ball that injured plaintiff, had actually seen plaintiff and other children playing on the fairway as they approached the tee. The Court said: "Upon these facts, infant plaintiff, even if a trespasser, was a known trespasser. It was not merely to be anticipated that he *might* be there, along with other children. He was there, he was seen, his presence was actually known to the golf professional assigned to the course". (Emphasis in original.) *Lyshak* at 251. Thus, that defendants in *Lyshak* had knowledge of prior trespasses was largely irrelevant in view of their actual knowledge that plaintiff, a child trespasser, was present on the land.

trespassing child plaintiff whom defendant land-owner actually knew was at large on land where such a condition was present.

In *Powers v Harlow, supra,* the child plaintiff was injured by a blasting cap that he found in a box in an open shed on defendant's land. Plaintiff's father had leased a garden plot on defendant's land, and plaintiff child therefore had a right to be on the land. The Court, per COOLEY, J., said:

"The moving about of the children upon the land where they were at liberty to go, while they were not actually employed, was as much an incident to their being there as is the loitering or playing by children outside the traveled part of the highway as they go upon it to school or upon errands. Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken." *Powers,* at 515.

This statement is sound, both in law and in common sense. In *Powers* the shed, which apparently contained nothing else besides the dangerous explosives stored there by defendant, and which was "distant from any public highway", was left "only partly enclosed". The Court thought that "its structure and location were such as naturally to invite the entrance of children either for play or for shelter * * * :"

"Children were rightfully near it; there was nothing in its appearance to warn them off; it was not fastened against their entrance; and there was nothing about it

to indicate that they would do injury or be injured by going there." *Id.*

In *Butrick v Snyder, supra,* at 306–307, relied upon by the trial judge, there was no evidence that defendant actually knew that children played on the land where it stored its explosives in a shed, but the Court thought that the proximity of a nearby school and the "probability" that the land would be used as playground "were apparent to defendant's employees", and under those circumstances the question of whether danger should have been anticipated was for the jury. See *Anderson v Newport Mining Co, supra.*

Under all of the circumstances of this case it was foreseeable that Rodney and Darwin, in the course of wandering at large on defendants' premises, would enter the open garage, if indeed it was open, and there find the weapon that Mr. Sabin had negligently left loaded and within their reach. Mr. Sabin testified to his many years of experience with weapons, and although we sympathize with his plight, we are unmoved by his testimony that he did not know the gun was loaded. Further, Mrs. Sabin testified that she knew that Mr. Sabin kept loaded weapons in the garage and about the house. Our holding imposes liability upon possessors of land who, with knowledge that there have been in the past, and are presently, young children on their property accompanying business visitors, nevertheless fail to take steps to ensure that in the course of their wanderings such children do not come into possession of loaded weapons.[7] Under the facts of this case, we think the result

---

[7] Generally, a loaded weapon is considered a dangerous instrumentality. *See Chaddock v Plummer,* 88 Mich 225, 229; 50 NW 135 (1891); *see generally* Anno, 68 ALR2d 782.

reached by the trial judge is supportable under the attractive nuisance doctrine.[8]

However, crucial to our decision are the admissions in defendants' pleadings that the door was "open". In the absence of any finding of fact by the trial judge on this question, we must remand this case for further essential finding of fact. If the trial judge finds that the term "open", as used in defendants' pleadings, means "standing open" as opposed to "closed but unlocked", then his decision shall stand affirmed.[9] If the trial judge does not so find, a new judgment for defendants will enter.

Remanded accordingly. Costs to abide and be taxed according to the final result.

R. M. MAHER, J., concurs in result only.

[8] In this connection we note the case of *Wroth v McKinney*, 190 Kan 127; 373 P2d 216 (1962). There plaintiff, a plumber, took his four-year-old son with him while doing some plumbing work at defendant's residence. Defendant knew of, and acquiesced in, the boy's presence. Plaintiff's son found a loaded revolver, which defendant kept in view in his bedroom, the door to which was left open. Defendant had taken no steps to warn plaintiff of the existence of the weapon nor to place it out of harm's way, and the boy found the revolver and shot himself, resulting in instantaneous death. Although the Court did not expressly characterize the case as one involving the attractive nuisance doctrine, it quoted language taken from *Powers v Harlow, supra*. The Court affirmed the trial court's overruling of defendant's demurrer, noting that it is negligent to place loaded firearms within the reach of young children and that the highest degree of care is required of responsible persons having ownership or control of dangerous explosives and firearms. We agree.

[9] We may remand for essential determination of unsettled or overlooked questions of fact. *Schneider v Pomerville*, 348 Mich 49, 58–59; 81 NW2d 405 (1957). In making his finding, the judge may rely on the admissions contained in the pleadings and upon the testimony at trial.