*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF JADEN WINTERS, by KRISTINA
NUPPNAU, Personal Representative,

UNPUBLISHED
March 11, 2021

Plaintiff-Appellant,

v

No. 350573
St. Clair Circuit Court
LC No. 18-002153-NO

THOMAS L. SANTO and KAMILLA M. FROST,

Defendants-Appellees.

Before: LETICA, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiff is the mother of Jaden Winters, who tragically died in March 2018, at age 14, from a self-inflicted gunshot wound to the head. At the time of his death, Jaden was living with defendant Kamila Frost, his grandmother, and her husband, defendant Thomas Santo. Plaintiff brought this action alleging that defendants were liable for Jaden's death under several different theories because, while living at defendants' home, Jaden had access to the loaded, unsecured firearm used in the shooting. The trial court denied plaintiff's motion for partial summary disposition on the issue of liability and granted defendants' motion for summary disposition, ruling that there was no genuine issue of material fact that Jaden's death was a suicide, and therefore, plaintiff could not establish that defendants' alleged conduct was a proximate cause of Jaden's death. Plaintiff appeals as of right, and we affirm.

Jaden, who was 14 years old at the time of his death, had lived with defendants since he was seven years old, but he would spend weekends, holidays, and periods when he was not in school with plaintiff. Defendants owned multiple firearms. Defendant Santo is a former police officer who was certified to teach classes for persons applying for a concealed pistol license (CPL). He taught the classes at a shooting range on his property. Frost was trained in firearm safety by Santo. Both defendants are hunters. Jaden had completed a hunting safety program and was certified by the state of Michigan for hunting. Defendants reinforced hunting safety procedures with Jaden. Jaden had hunted with defendants and he also participated in shooting at Santo's shooting range. He was supervised by defendants when handling firearms.

Defendant Santo owned a .38-caliber firearm that he used to carry regularly, but he stopped carrying it after his health declined. According to Frost, approximately three years before Jaden's death, she obtained the gun from Santos and placed it on top of her refrigerator. She admitted that the gun was loaded and said she intended to secure it later, but forgot about it. On March 19, 2018, after Jaden returned home from school, he was given a list of work to do around the house while Frost went to the store. When Frost returned home, she could not find Jaden. She eventually discovered Jaden lying on the floor in a barn with a gunshot wound to his head. He was still breathing and he was taken to the hospital, but he died days later.

When the police arrived, they found Santo's .38-caliber handgun on the ground between Jaden's legs. The medical examiner determined that Jaden's gunshot would was a through-and-through contact wound to the right temple of his head. The medical examiner and the police concluded that the manner of death was suicide.

Plaintiff alleged in her complaint that defendants were liable for Jaden's shooting death under theories of strict liability, attractive nuisance, negligent entrustment of a firearm, and negligence per se. Defendants moved for summary disposition, arguing in part that because Jaden committed suicide, their alleged conduct was not the proximate cause of his death. The trial court agreed and granted defendants' motion for summary disposition. Plaintiff now appeals that decision.

We review de novo a trial court's decision to grant or deny summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Defendants moved for summary disposition under MCR 2.116(C)(7) (immunity) and (10) (no genuine issue of material fact). Although the trial court did not state under which subrule it granted defendants' motion, it did not reach the issue of parental immunity, which was the basis for defendants' motion under Subrule (C)(7), and it expressed its agreement with defendants' arguments related to Subrule (C)(10). A motion under MCR 2.116(C)(10) tests the factual support for a claim. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood*, 461 Mich 109, 118-120; 597 NW2d 817 (1999). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014).

Initially, plaintiff argues that the trial court erred by concluding there was no genuine issue of material fact that Jaden's death was a suicide, rather than an accidental shooting. We disagree.

There was no evidence that Jaden was shot at a location other than where his body was found in the barn. The evidence indicated that the gun was kept on top of the refrigerator, which meant that Jaden had to have retrieved the gun from that location and brought it to the barn. An autopsy revealed that the gunshot wound was a through-and-through contact wound to the right temple. The medical examiner concluded that the cause of death was a contact gunshot wound to the head and that the manner of death was suicide. Although Dr. Gerald Shiener, a forensic

psychiatrist with experience in evaluating patients who have contemplated or attempted suicide, averred in an affidavit that a contact wound can also be caused by mishandling a firearm, he did not address that Jaden's contact wound was directly to his right temple. It is hard to envision how Jaden could have accidentally shot himself by holding the gun directly to his right temple. The evidence that the gun was in direct contact with Jaden's right temple when it discharged is inconsistent with an accidental shooting and overwhelmingly indicates that the shooting was intentional. Plaintiff also submitted an affidavit from Dr. Ljubisa Dragovic, the chief medical examiner for Oakland County. Although Dr. Shiener and Dr. Dragovic both opined that the evidence did not conclusively establish that the shooting was intentional, neither cited any evidence supporting a conclusion that the gun discharged accidentally. While they cited evidence to indicate that Jaden might not have planned his death, that evidence did not raise a genuine issue of material fact whether the actual shooting was accidental.

We agree that circumstantial evidence surrounding Jaden's death does raise possible questions about whether Jaden planned to commit suicide. No note was left and Jaden had not expressed any depressive or suicidal thoughts. He did not seem to be experiencing any new or serious problems in his life. He had also paused a video game he was playing, suggesting that he intended to return to it. However, these matters only raise questions about whether Jaden planned his death. This evidence does not refute that Jaden purposefully obtained the gun from the house and brought it with him to the barn in the first instance, and it does not refute the physical evidence of an intentional shooting. Thus, the circumstantial evidence surrounding Jaden's life does not raise a question of fact whether he accidentally shot himself when he placed the gun in direct contact with his temple.

Plaintiff relies on *Aetna Life Ins Co v Kent*, 73 F2d 685 (CA 6, 1934), in support of her argument that there is an issue of fact whether Jaden's shooting death was accidental or intentional. However, this case is factually distinguishable from *Kent*. In *Kent*, the decedent, an attorney, possessed a firearm while visiting a police station and began discussing how he had defended a client charged with murder under the theory that the victim committed suicide. *Id*. at 686. The decedent pulled out his gun and pointed it at his head to demonstrate how the victim committed suicide. An officer warned him that the gun might be loaded, but the decedent replied that it was not loaded. In fact, it contained a single cartridge. When the decedent pulled the trigger, he shot himself with the single cartridge, killing himself. *Id*. The defendant was the beneficiary under an accident insurance policy issued to the decedent, but the insurance company denied her claim on the ground that the shooting was suicidal or not effected by accidental means. *Id*. at 685-686. Although the evidence showed that the decedent intentionally pulled the trigger when he shot himself, the court expressed its agreement with authority recognizing that an injury may qualify as accidental when an intentional act causes an unexpected consequence or result, or a person commits a voluntary act while ignorant of a material fact or circumstance that, if known, would have caused the person to act differently. *Id.* at 686. The court agreed that the evidence raised a question of fact whether the decedent's shooting death was a suicide or accidental, and therefore, the issue was properly submitted to a jury. *Id.* at 686-687. Unlike in *Kent*, in which there was direct evidence that the decedent unintentionally shot himself during a demonstration in which the decedent believed that the gun was unloaded, there is no evidence supporting a theory of an accidental shooting in this case.

Plaintiff suggests that Jaden's shooting could have been accidental because Jaden may have intended to take a starter pistol from the top of the refrigerator, but mistakenly took the loaded .38-caliber revolver. However, there was no evidence that Jaden knew about the starter pistol or had used it before. Frost explained that the starter pistol was used in the firearms classes that Santo taught, but Jaden did not participate in those classes. Further, there is no evidence that Jaden had any reason to look for or take the starter pistol. Plaintiff's contention that Jaden did not intend to remove the loaded revolver from the refrigerator, but only intended to take the starter pistol, is based only on plaintiff's speculation, unsupported by any evidence, which is insufficient to establish a genuine issue of fact. See *Dancey v Travelers Prop Cas Co of America*, 288 Mich App 1, 12; 792 NW2d 372 (2010).

Although plaintiff presented expert testimony in support of her position that the shooting could have been accidental, those expert opinions were not based on any facts supporting an inference of an accidental shooting. Accordingly, plaintiff's experts' opinions do not establish a genuine issue of material fact whether the shooting was accidental. See *Teal v Prasad*, 283 Mich App 384, 394-395; 772 NW2d 57 (2009) (although Dr. Shiener maintained that the defendants' decision to discharge the decedent led to the decedent's suicide, his opinion did not establish a question of fact whether the defendants' actions were the cause of the decedent's suicide because "he could not refer to any facts or establish a causal chain of events that would support his opinion").

Accordingly, the trial court did not err by concluding that there was no genuine issue of material fact that Jaden committed suicide. Further, in light of that conclusion, the trial court did not err by ruling that defendants could not be held liable for Jaden's death because Jaden's intentional act of suicide breaks the chain of causation and there is no evidence that defendants should have foreseen that Jaden might harm or kill himself.

All of plaintiff's claims required them to prove that defendants' conduct was the proximate cause of Jaden's death. Causation is generally a matter for the trier of fact, but if there is no issue of material fact, then the issue is one of law for the court. *Holton v A+ Ins Assoc, Inc*, 255 Mich App 318, 326; 661 NW2d 248 (2003). In *Martin v Ledingham*, 282 Mich App 158, 161; 774 NW2d 328 (2009), rev'd on other grounds 488 Mich 987 (2010), this Court stated:

> Proof of causation requires both cause in fact and legal, or proximate, cause. *Haliw v Sterling Hts*, 464 Mich 297, 310; 627 NW2d 581 (2001). Cause in fact generally requires a showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. *Craig v Oakwood Hosp*, 471 Mich 67, 86-87; 684 NW2d 296 (2004). Cause in fact may be established by circumstantial evidence, but, to be adequate, such evidence must give rise to reasonable inferences of causation, not mere speculation. *Skinner v Square D Co*, 445 Mich 153, 163-164; 516 NW2d 475 (1994).

Proximate cause, or legal cause, involves examining the foreseeability of consequences and whether the defendant should be held liable for such consequences. *Craig*, 471 Mich at 87, quoting *Skinner*, 445 Mich at 163. A court must first find that a defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's act was the proximate or legal cause of the injuries. *Id*.

In *Ridley v Detroit*, 231 Mich App 381, 389; 590 NW2d 69 (1998), remanded for reconsideration on other grounds 463 Mich 932 (2000), this Court stated:

> The question whether wrongful conduct is so significant and important as to be considered a proximate cause of an injury depends in part on foreseeability. *Moning v Alfono*, 400 Mich 425, 439; 254 NW2d 759 (1977); *Ross v Glaser*, 220 Mich App 183, 192; 559 NW2d 331 (1996). A proximate cause is one that operates to produce particular consequences without the intervention of any independent, unforeseen cause, without which the injury would not have occurred. *Id*. at 192-193. The determination whether wrongful conduct may be considered a proximate cause of an injury involves a determination whether the connection between the wrongful conduct and the injury is of such a nature that it is socially and economically desirable to hold the wrongdoer liable. *Id*.

The suicide of a plaintiff's decedent is not generally actionable because suicide is considered a superseding cause of the decedent's injury. "A superseding cause is one that intervenes to prevent a defendant from being liable for harm to a plaintiff that the defendant's antecedent negligence is a substantial factor in bringing about." *Hickey v Zezulka (On Resubmission)*, 439 Mich 408, 436; 487 NW2d 106, amended 440 Mich 1203 (1992), citing 2 Restatement Torts, 2d, § 440, p 465.[1] See also *Meek v Dep't of Transp*, 240 Mich App 105, 120-121; 610 NW2d 250 (2000), overruled on other grounds by *Grimes v Dep't of Transp*, 475 Mich 72, 73-76 n 6; 715 NW2d 275 (2006). "[T]o be a superseding cause, thereby relieving a negligent defendant from liability, an intervening force must not have been reasonably foreseeable." *Hickey*, 439 Mich at 437. Conversely, "[i]f the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." *Id.*, quoting 2 Restatement Torts, 2d, § 449, p 482. In a concurring opinion in *Hickey*, Justice Riley observed:

> As a general rule, a plaintiff may not recover damages in negligence for the intentional suicide of another. Where a plaintiff intentionally commits an act that brings about an injury, the risk of which was increased by the defendant's negligence, the plaintiff ordinarily loses any cause of action he might have because of defendant's negligence. Where, however, the defendant assumes a duty to protect the plaintiff from that injury, as in this involuntary custody situation, I agree that the plaintiff should not lose his cause of action. I disagree, however, that the other extreme should be adopted—that the defendant then assumes all responsibility, and liability, for injuries that the plaintiff intentionally commits upon himself. The assumption of a duty to protect the decedent while in defendant's custody merely establishes a legal basis for holding defendant negligent. The mere existence of a duty does not automatically lead to the conclusion that the decedent's fault should not be considered. Decedent's fault, or contributing cause of his injury,

---

[1] The Restatement Torts, 2d, § 440, states that "[a] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

is his intentional and unreasonable exposure to the danger created by defendant's negligence. 2 Restatement Torts, 2d, § 466, p 511. [*Hickey*, 439 Mich at 447-448 (footnotes omitted) (RILEY, J., concurring).]

Plaintiff does not contend that defendants had any reason to believe that Jaden was suicidal or might be inclined to harm himself so as to assume a special duty to protect him from that injury. Plaintiff argues, however, that defendants may be held liable on the basis of a duty to protect children from accessing firearms. In *Lelito v Monroe*, 273 Mich App 416; 729 NW2d 564 (2006), a homeowner's adult guest, who was a convicted felon, obtained access to the homeowner's firearm, which the guest then used to shoot the plaintiff's decedent, who was the guest's girlfriend. *Id*. at 417. This Court rejected the plaintiff's argument that the guest's status as a convicted felon made it foreseeable that the guest might misuse the firearm, thereby giving rise to a duty regarding storage of the gun. *Id.* at 418-422. This Court further stated:

> Plaintiff's observation that we have recognized a general duty to keep children from possessing firearms leads to no different result. This Court has held that a premises owner storing a loaded firearm in his garage is exposed to liability when a child trespasser discovers the weapon and accidentally shoots another with it. *Gilbert v Sabin*, 76 Mich App 137, 148; 256 NW2d 54 (1977). The Legislature has likewise recognized that firearms are generally too dangerous to be entrusted to children. MCL 750.234f (prohibiting possession of a firearm by a minor but for narrowly drawn exceptions). The law thus does impose on a gun owner a special obligation to keep his or her firearms from a child's—even a trespassing one's— ready access. However, this special duty not to tempt children with firearms stems from children's "inability to appreciate danger and . . . inclination to explore without regard to the risk," *Moning*, *supra* at 445—in other words, their lack of adult judgment and capacity for restraint. [*Lelito*, 273 Mich App at 422-423.]

Although these observations support the conclusion that defendants could be subject to liability for failing to secure their loaded firearm in a location not accessible to children, they do not obliviate the requirement that, for liability to be imposed, defendants' wrongful conduct must have been the proximate or legal cause of Jaden's injury. The evidence did not support a finding that Jaden was unknowledgeable about guns or that he did not understand or appreciate their dangerous nature. On the contrary, Jaden was trained in firearm safety. He had attended a hunter-safety course and was certified in 2014 by the state of Michigan for hunting. Jaden had hunted with Santo and fired guns at Santo's gun range. Santo was a certified instructor who taught CPL classes, and he reinforced gun safety use with Jaden. In any event, as explained earlier, there is no genuine issue of material fact that Jaden committed suicide, and because there is no evidence that defendants had any indication that Jaden was suicidal or even experiencing personal problems, Jaden's intentional act of causing his own death is a superseding cause of his injury, thereby precluding defendants' liability for any negligence.

Because all of plaintiff's claims required them to prove that defendants' conduct was the proximate cause of Jaden's death, and Jaden's suicide operates as a superseding cause of his injury severing the chain of causation, the trial court properly dismissed all of plaintiff's claims.

Affirmed.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood